*J. C. Hall*, for appellants.

*Reeves & Miller*, for appellees.

---

### WRIGHT *v.* MEEK *et al.*

Where a bill was filed to set aside a judgment in partition for fraud, and *pendente lite,* the complainant transferred his interest to his children, held that such transfer could not be pleaded in bar to the proceeding.

A plea in bar not allowed in chancery, if it depends upon facts which have transpired since the filing of the bill. GREENE, J., *contra.*

Where the complainant transferred his equity subsequent to the filing of the bill, the purchasers may become complainants by supplemental bill.

The doctrine of champerty and maintenance not applicable to this State.

IN EQUITY.   *Appeal from Lee District Court.*

*Opinion by* KINNEY, J. John Wright filed a bill in chancery against Meek and others, charging fraud in the rendition of a decree in partition, and stating among other things, that he had a good and valid title, regularly derived from the Half Breeds of the Sac and Fox Indians, to a

Wright v. Meek.

portion of the land decreed and partitioned to others. A demurrer was interposed and sustained to this bill in the district court. This court having reversed the decision sustaining the demurrer, and the cause having been remanded for further proceedings, Edward Kilbourne, one of the defendants, filed the following plea:

"This defendant by protestation, not confessing or acknowledging all or any of the matters and things in the said complainant's bill of complaint, mentioned and contained to be true, in such sort, manner, and form as the same are therein set forth and alleged, for plea to said bill, says: that since the filing of said bill, that is to say, on the 22d day of February, 1847, the said complainant in consideration of the sum of one hundred dollars, and of natural love and affection, by certain deed of conveyance of that date, signed and sealed by the said complainant, together with Nancy Wright, his wife, a copy of which is ready to be produced to this honorable court, did bargain, sell and confirm unto James Wright, Alexander M. Wright, Ferguson Wright, Mitchel D. Wright, Joseph T. Wright, Campbell Wright, and Matthew H. Wright, and their heirs and assigns forever, all his interest and estate in and to the land mentioned in the said bill. Therefore this defendant pleads the said conveyance in bar of the said bill, and demands the judgment of this honorable court, whether he shall be compelled to answer the same."

This plea was allowed by the court to be a good and sufficient plea in bar of said suit. From this decision the complainant appealed. To supply a dimunition of record which was suggested in this court, the following agreement was entered into by the council of the respective parties: It is agreed that after the plea filed by the said Edward Kilbourne was allowed as a good and sufficient bar, the complainant prayed the court below for leave to file a supplemental and amended bill, setting forth that John Wright conveyed all his interest in the land described in his

31

original bill as alleged in the plea of the said Edward Kilbourne, and that said conveyance was made for no other consideration than love and affection, and for the purpose of settling the land upon the said grantees, his children; that James Wright, Alexander M. Wright, Matthew W. Wright, Joseph Wright and Campbell Wright, a part of his said grantees, on the 16th day of March, A. D., 1850, re-conveyed for a good consideration, to him the said John Wright, for the purpose of enabling him, the said John, to carry on this suit, and that Ferguson and Mitchel D. Wright, two of his said grantees, had not re-conveyed the interest acquired from said John and praying that Ferguson and Mitchel D. Wright be made parties complainants with said John, by virtue of their said interest in said land. That the court refused to allow such supplemental and amended bill to be filed on the ground that the reconveyance made to complainant, John Wright, by a portion of his said grantees, would be no defence to answer to the matters set up by said plea, and secondly, that said Ferguson and Mitchel D. Wright could not become parties complainants by reason of anything in the proposed supplemental and amended bill averred and set forth."

The facts contained in this agreement form an important part of the record in this case. The first question presented by this record is, was the plea properly allowed by the court as a plea in bar? Although the court erred in not permitting the assignees who had re-conveyed to be made parties complainants, yet as the plea alleged an entire alienation of interest *pendente lite*, and it remaining unanswered, we were inclined to the opinion that the court were right in allowing it as a bar, not on the ground of champerty, which we will hereafter notice, but because there is not any person who had any interest to prosecute the suit; but on a careful and attentive examination of all the authorities at all analagous to the case under consideration, we are satisfied that a transfer of interest either involuntarily, by operation of

Wright v. Meek.

law, or voluntarily, would not operate as an unconditional bar to the prosecution of the suit. We have not been able, after much research, to find a single case where on alienation of interest *pendente lite* either voluntary or involuntary, a plea in bar in chancery on that account has been allowed as a good plea. The numerous class of cases of transfer of interest during pendency of suit is by operation of law in cases of bankruptcy, although there is a distinction drawn by some of the elementary writers, and also by courts, between this class of cases and that of voluntary alienation; yet the principle involved in the two cases is the same, and the rule applicable to the one is alike applicable to the other. In the former case, the alienation of interest by operation of law, is as perfect and complete as the latter. The assignee in bankruptcy occupies the same position to the bankrupt and adverse party as the asignee under a voluntary transfer of interest does to the assignor and the defendants. In both these classes of cases we do not find any authority which goes so far as to regard the alienation as a bar, but rather as so affecting the suit as to make it necessary for the assignee to be made party; and if this is not done within a reasonable time the suit will be dismissed.

The case of *Massey* v. *Gilleland*, 1 Paige C. R. 644, was a case where the complainants became insolvent pending the suit, and assigned all their interest therein to a third person, and the suit was continued for the benefit of such third person; the chancellor upon application required that the complainants or assignees should give security for costs to the defendant within a certain time or the bill would be dismissed. True the assignment in this case was not pleaded, but it was presented to the court by petition with a prayer for security of costs. If such transfer of interest operated absolutely as a bar, we think the learned chancellor would have given an intimation of it in his opinion.

The case of *Williams* v. *Kinder*, 4 Vesey, 386, we think fully sustains the view we have taken of this question. By a former decree the cause was referred to a master to take

certain accounts. Before the accounts were gone through, the plaintiff took the benefit of the insolvent act, and assignees were appointed, to whom his estate and effects were assigned by the clerk of the peace in whom his property first vested under the act. A motion was made on the part of the defendants to stay proceedings until a supplemental bill should be filed by the assignees. This was resisted on the ground that the case should go on by the assignees giving security for costs. The lord chancellor in deciding this question, draws a very sensible distinction between cases at law, where the plaintiff becomes bankrupt, and cases in chancery, and decides that in the former the cause will proceed on giving security for costs; but that in the latter, the assignees must file a bill. He adds that there is no other way for them to come into court. If a plaintiff at law becomes bankrupt, the defendant can lose nothing but his costs. There can be no judgment against the plaintiff but the costs. In that case, therefore, if there are further proceedings, all that is necessary is to get security for costs. But in this court more is necessary. A plaintiff in equity may have a decree against him for an account and to pay the balance. " I must have before me, therefore," says he, " in a cause in equity a substantive plaintiff who may abide such decrees as may be made." It will be recollected that in the case of *Massey* v. *Gilleland* the only question was upon the complainant or assignee giving security for costs, and the question whether the assignee should be made a party did not arise. The defendant was satisfied with security for costs. But it is worthy of remark that in neither of these cases does it appear to have occurred to the counsel or the court, that the voluntary assignment after insolvency in the one case, or the assignment by operation of law in the other would operate as a bar to the suit; but in the case of *De Menckivitz* v. *Ulney*, 16 Vesey, 466, the question was directly decided by a plea in bar. A bill for a specific performance was filed. The defendant

pleaded that by an act of Parliament, 49 Geo. 3, for the relief of insolvent debtors, it was enacted that any person who on the first of February, 1809, was charged in person for any debt, which did not in the whole amount to a greater sum than £2,000, should be discharged, and that all the estate, title, right and interest, and trust of such debtor in real and personal assets should be vested in the clerk of the peace. The plea contains the usual averments that the plaintiff was discharged under the act, &c.; that all his real and personal property became vested in the clerk of the peace and remained in him, and concludes by pleading the act in bar.

In this case the complainant obtained relief of the Insolvent Act after filing his bill *pendente lite,* and the bill prayed for a specific performance by which the complainant was to come into possession of valuable real estate. The act unconditionally divested him of all his interest in all his real and personal estate and invested it in the clerk of the peace. A voluntary assignment could not be more complete. The act was pleaded in bar, and Lord Chancellor Elden in delivering his opinion says : "The defendant could not get over the fact that these circumstances did not exist when the bill was filed, and the consequence is that the assignee under the act, clerk of the peace or assignee, must come in by supplemental suit."

The plea was accordingly overruled. This is the only adjudicated case we have been able to find in point, and indeed the only one which has fallen under our notice where a transfer of interest *pendente lite,* either by operation of law or voluntary, has afforded matter for a plea in bar, the Lord-Chancellor overruled the plea on the ground that the circumstances did not exist at the time the bill was filed, and consequently the matter contained in the plea having transpired since the filing of the bill, it would not operate as a bar. We think that it may be safely asserted as a correct rule, that a plea in chancery should never be allowed as a bar if it depends for its basis upon

facts which have transpired since the filing of the bill. Pleas in bar are not necessarily predicated upon matter recorded or as of record, in a court of equity, or any other court, but may be founded on matters *in pais;* but such matters must have an existence before the filing of the bill, in order to make them available by plea in bar. These may be stated accounts, an award, a release, a will, or conveyance, &c.

Having shown from the authorities that a transfer of interest *pendente lite* either by operation of law or voluntary, will not bar the suit, and therefore should not be pleaded as such; we will now consider the effect of such transfer, and the remedy of the party affected by it. The great leading American case on this subject, is that of *Sedgwick* v. *Cleaveland,* 7 Paige, 287, from which we will quote at some length. A judgment-creditor's bill had been filed against Sedgwick, the complainant in this suit, before the vice chancellor, at the suit of Thomas and Card, and an order for the appointment of a reciever had been made in that suit, under which the complainant, Sedgwick, made a general assignment of all his property, effects, and things in action, both legal and equitable, to the receiver in the suit before the vice chancellor. The counsel for Cleaveland demand the right of the complainant to proceed in the suit.

Chancellor Walworth in his opinion says: If this had been a case of an assignment by the complainant under the insolvent act, there could have been no possible doubt that the suit had abated, or rather that it had become so defective that the complainant could not proceed any further in his own name against the defendant, if the latter had thought proper to raise the objection. The court requires the real parties in interest to bring the suit, except in certain cases when the complainant represents the rights of those for whom the suit is brought, both legally and equitably, as in the case of executors, or trustees, or assignees under

the insolvent acts. And when the sole complainant who originally brought the suit in his own name, and no *auter droit*, is discharged under the insolvent acts, and makes an assignment of his property for the benefit of his creditors, the assignee must be made a party before the suit can be further proceeded in; *Williams* v. *Kinder*, 4 Vesey R. 387. The proper course for the defendant in such a case if he wish to have the suit proceeded in, or put an end to, is to apply to the court for an order that the assignee file a supplemental bill, in the nature of a bill of revivor, within such time as shall be prescribed by the court for that purpose, or that the complainant's bill be dismissed; and notice of such application should be served on the assignee as well as upon the complainant in the original suit; *Porter* v. *Cox*, 5 Mad., R. 80. In the case *Yure* v. *Young*, 9 Wend. R. 649, the principle that the suit becomes defective in such a case and cannot be proceeded in, if objected to by the defendant, until the assignees are brought before the court, is distinctly recognized. It is proper also to remark that in case of an assignment under the bankrupt or insolvent act, the suit is not strictly abated even as to the complainant; but it merely becomes so defective that he cannot proceed therein until the assignee is brought before the court; and the assignee becomes so far the legal and the equitable representative of the rights of the complainant, that upon a new and supplemental bill, in the nature of a bill of revivor and supplement, being filed by the assignee to continue the proceeding in his own name, it is not necessary to make the former complainant a party thereto, which would be necessary in case of an assignment of only a part of the interest of the complainant in the subject matter of the suit. The learned Chancellor further says: "That where a party who has assigned the whole or a part of his interest in the subject matter of the suit attempts to take any active proceeding therein, the adverse party may object to such

proceeding on the ground that the suit has become abated or defective as to such assignor so that the same cannot be proceeded in until the assignee is made a party." The Chancellor here speaks of voluntary assignments, the effect of which is to render the suit so defective that it cannot proceed in the name of the assignor, and unless the assignee is, within a reasonable time, made a party, the suit will abate. The suit does not necessarily abate by reason of the assignment; the adverse party may take some step in the proceedings after becoming acquainted with the fact which will amount to a legal waiver of his right to urge the objection. If the objection be taken at the proper time, the assignee may be made party by filing the proper bill. In support of this doctrine—*vide* Story's Eq. Pl., § 349, Mit. Ch. Pl., 64—copious reference might be made to Mitford and Story, showing that in case of assignment the suit does not necessarily abate, but may continue by making the assignee a party. We think, however, the above to be sufficiently conclusive on this point. The next question is, in what manner should the assignee be made party? If by the assignment the suit abates, it follows that the assignees, in order to avail themselves of any benefit obtained by the transfer must file a bill of revivor. But if the converse of this be true, as we have shown, and the suit does not abate, a bill of revivor is not only unnecessary, but improper, the object of the bill is merely to bring new parties before the court, and if, as we have shown, the suit is affected only by the alteration of interest which operates alone upon the parties, and not the subject matter of the suit, these new parties should stand in the same relation to the adverse party, as did the complainant before the transfer. *Deas* v. *Thomas*, 3 John., R. 551.

A bill filed by the assignee for this object, it is true, is in one respect, an original bill; original as being filed by new parties, but its nature is entirely supplemental, and is

Wright v. Meek.

therefore frequently called in the books, an original bill, in the nature of a supplemental bill.

Thus in the note to § 349, Story's Eq. Pl., it is said whether a suit in equity is abated by the bankruptcy of the plaintiff as well as defendant, has been a matter of doubt. But it seems now, to be thought, that the weight of authority is, that it is defective merely, and that the assignee may be brought forward by supplemental bill. See Cooper Eq. Pl. 76, 77; Metf. Eq. Pl. 65 and notes; and in the same note Lord Redesdale's language is: "If a commission of bankruptcy issue against any party to a suit, or he is discharged as an insolvent debtor, his interest in the subject is, unless he is a mere trustee, generally transferred to his assignees, and to bring them before the court a supplemental bill is necessary." Lord Redesdale, however, in the same note, holds to a doctrine that was relied upon in the argument; but it will be seen that he is speaking of the determination of the interest of the plaintiff or defendant, and the property becoming vested in another person who does not claim under him, as in the case of an ecclesiastical person succeeding to a benefice, or a remainder man in a settlement becoming entitled upon the death of a prior tenant, under the same settlement; in such case the suit cannot be continued by bill of revivor, nor its defects supplied by supplemental bill. This is not at all applicable to the case before us, as in this case, the assignees claim under the complainant, John Wright, and the illustration given by his lordship shows the application he intended to make of his proposition. We have thus far treated this case as though no re-conveyance had been made by any of the grantors. That re conveyance, we think, clothes the case in a new and different garb, and although there may be apparently some confusion in the books in relation to the proper bill, by which the assignees, when the interest remains alienated, shall be made parties, still when a part only of the interest is transferred, we think there can be no doubt as to
32

the proper course to bring in the assignees. By the agreement it appears that five out of the seven of the grantees re-conveyed to the complainant, for the purpose of enabling him to carry on the suit. This, we think, they had a right to do. We cannot see any impropriety in this; the effect was to restore the complainant to the same position, so far as they were concerned, which he occupied before the assignment.

The case, then, stands thus: At the time the objection was made the complainant owned five-sevenths, and the assignees, Ferguson and Mitchell D. Wright, two-sevenths; the complainant is, by his voluntary act, divested of a part of his interest. He is still a substantive complainant.

If the view we have taken in relation to the re-conveyance be correct, there is no doubt about the right of Ferguson and Mitchell D. Wright, to be made parties by the supplemental bill, even if there had not been a re-conveyance. We think from the authorities, it is quite as clear that they would have a right to file an original bill in the nature of a supplemental bill, by which they could secure to themselves all the advantages and benefits which had accrued to the complainant, anterior to the assignment.

Only one question remains to be noticed. It was contended in the argument, with much apparent confidence, by the counsel for the defendants in error, that the assignment of the complainant savored of champerty and maintenance, which are forbidden by law.

In this country there is but little or no necessity for enforcing the doctrine of champerty or maintenance. The causes which gave rise to the law do not here exist, and according to the ancient maxim, when the reason for the law ceases, the law itself ceases.

The English doctrine of maintenance arose from causes peculiar to the state of society in which it was established. The great reason for the suppression of champerty and maintenance, was the apprehension that justice itself was

Wright v. Meek.

endangered by their practices. Blackstone, 4 Com., 138, speaks of this offense as perverting the privileges of the law into an engine of oppression. In the case of *Sly-wright* v. *Paige*, 1 Leon, 167, it was said by the whole court of common pleas, that the meaning of the statute of the 33 H., 8, concerning maintenance, was to "repress the practices of many, who, when they thought they had title or right to any land, for the futherance of their pretended right, conveyed their interest, or some part thereof, to great persons, and with their countenance did oppress the possessors." The power of great men to whom rights of action were transferred, in order to obtain support and favor in suits brought to assert these rights, the confederacies which were thus formed, and the oppressions which followed from the influence of great men, in such cases, are themes of complaint in the early books of the English law. While the power of nobles and great men was felt in the administration of justice, these practices seem to have produced real and great evils.

In that state of things, instead of invigorating and purifying the administration of justice, as the direct remedy for such evils, the laws concerning champerty and maintenance were established as penal regulations, intended to operate upon the parties to these transactions.

It was a principle of the common law, that a right of action could not be transferred by him who had the right, to another. When we seek the reason of this rule, we find it in the motive already mentioned, an apprehension that justice would fail, and oppression would follow, if the right of action might be assigned. "Nothing," says Coke, Co. Lit., 114, "in action entry or re-entry can be granted over, for so under color thereof, pretended titles might be granted to great men, whereby right might be trodden down and the weak oppressed." This doctrine, it will be seen, has grown out of the inequality of society in England. The rich, the great and noble, should not come in with their wealth and

influence, and maintain suits by which the weak and poor could be oppressed. In modern times the doctrine has, to a great extent, yielded, and the evils, under a pure and firm administration of justice, are little felt. Champerty and maintenance are now seldom mentioned as existing in fact, or as producing any considerable mischief.

In this country, with wise and wholesome laws, enjoying as we do a political and social equality, which never can exist under the institutions of England, with the administration of justice alike accessible to the poor and the rich, where oppression, such as give rise to the doctrine of maintenance and champerty in England, cannot exist, it is almost impossible to conceive how a case of champerty or maintenance can occur; it is a part of our judicial policy not to shut out suitors, or close the temple of justice against those who resort thither for an adjustment of their legal rights. Neither should litigation be incited, or improperly or unlawfully encouraged, so as to amount to oppression.

To check and prevent this, our statutes in relation to malicious prosecutions and limitations of actions, have been passed. We have no statute in this state against champerty and maintenance, as they have in New York and some other states of the Union; neither do we see any necessity for adopting the English law on this subject. The state of society which produced them, and the evils which they were intended to remedy do not exist here. To transfer the right of action, or to maintain the suit of another without having any direct or contingent interest in it, will not necessarily produce mischief or oppression in this country. It may, on the other hand, in particular cases, have a tendency to secure rights and promote the ends of justice.

But if this doctrine of maintenance prevailed here, still the maintenance of the suit of the complainant, Wright, by his sons would not be obnoxious to the law " when there is consanguinity or affinity between the suitor

Wright *v.* Meek.

and him who gives aid to the suit; the voice of nature and the language of the law equally declare that such assistance is not unlawful maintenance." *Thallhiner* v. *Brinker hoff*, 3 Cow., 623. In this case the learned chancellor has given an elaborate and able opinion upon this subject, in which the doctrine is, we think, viewed in its proper light.

The points raised and argued in this case being somewhat new, and, at first sight, a little embarrassing, and the case being one of great importance, we have examined the question at greater length than we might otherwise have considered necessary.

The judgment of the district court, allowing the plea of Edward Kilbourne as a bar to the suit, and refusing to permit Ferguson Wright and Mitchell D. Wright to be made parties by supplemental bill, is therefore reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Dissenting Opinion by* Greene, J. I cannot fully concur in the opinion. The right of a complainant to transfer his equities in a bill, *pendente lite*, is too broadly and generally asserted. Ordinarily, when a party seeks to take advantage of fraud in a judgment rendered against his land, it is for him alone, as the injured party, to seek the remedy. If the party on whom the wrong or fraud is perpetrated, waives his remedy by silent acquiesence, it does not belong to a purchaser under him to revive the remedy — to prolong the controversy and litigation, unless the fraud was collusive for the purpose of injuring such purchaser; and hence the common law doctrine, that fraud can only be avoided by him who had a prior interest in the estate affected, and not by him who subsequent to the fraud acquired the interest. 3 Coke, 83, a; 5 John. C., 554; 7 Paige C., 18.

I cannot indorse the doctrine of the opinion in this case, that the right of action against a fraud is transferrable, as

some other actions in equity may be; but I hold that such a transfer might in good conscience be recognized in all cases where it is made, as in this case, by a father to his children, who were, as heirs, interested in the remedy, and might have been dependent upon the very estate for support at the time of the alleged fraud. Upon the intimate relation of parent and child — upon the ground of consanguinity and the right of inheritance, and upon that only, do I favor the conclusion that the plea in this case should not be considered a bar to the proceeding.

I cannot agree with the opinion: "that a plea in chancery should never be allowed as a bar if it depends for its basis upon facts which have transpired since the filing of the bill." If this be true, then a full conveyance of all interest and right of action from complainant to defendant could not be pleaded in defense of the action.

In all other particulars, I fully concur in the able opinion of my learned brother.

Decree reversed.

*J. C. Hall* and *C. H. Phelps*, for appellants.

*Reeves* and *Miller*, for appellees.