| 67 | 281 |
|---|---|
| e69 | 150 |
| 67 | 281 |
| 66E | 17 |

JOHN VERNOU BOUVIER, JR., DEFENDANT IN ERROR, v. THE BALTIMORE AND NEW YORK RAILWAY COMPANY, PLAINTIFF IN ERROR.

Argued November 26 and 27, 1901—Decided March 17, 1902.

1. The "Act to authorize the transfer of estates in expectancy," approved March 14th, 1851, (*Gen. Stat.*, *p.* 881), is still available under that title, if necessary, notwithstanding its attempted transfer to "An act respecting conveyances" (*Pamph. L.* 1898, *p.* 670, § 19), and its inclusion in "An act to repeal sundry acts respecting conveyances." *Pamph. L.* 1898, *p.* 711.

2. Such act may not extend so as to authorize transfer of a right of entry for condition broken after the breach, but, independent of statute, such a right is, in this state, transferable after breach, because the policy that in England forbade a transfer, namely, the prevention of maintenance is not in force here. The case of *Schomp v. Schenck*, 11 *Vroom* 195, approved.

3. A right of entry, for condition broken, held by two or more persons will not support partition or alternative judicial sale of the land involved.

4. One of two or more persons holding a vested right of entry, for condition broken, may, without actual entry maintain ejectment for the land involved. *Quære.* Can the defendant effectually object to non-joinder of the other holders by giving notice under section 37 of the Practice act?

5. Except as above modified the case of this title in 34 *Vroom* 1, approved.

On error to the Supreme Court.

The plaintiff below recovered verdict and judgment in ejectment, and error is assigned upon exceptions sealed at the trial. Both parties claim title under the same deed, the defendant by reason of the conveyance and the plaintiff by reason of an alleged breach of its conditions.

The following are the salient facts involved: The Baltimore and New York Railway Company, the defendant below, was incorporated under the General Railroad law on November 19th, 1888, for the purpose of constructing a railroad, about six miles long, through Union county, from near where the Central railroad of New Jersey crosses the Rahway river to the railroad bridge across Arthur Kill. Its filed route, of one hundred feet in width, crossed, for about a quarter of a mile, a tract of about one hundred acres of land in the township of Linden, owned and possessed by Frederick A. Reichard and William H. Hume. On March 22d, 1889, these landowners, in consideration of the covenants of their grantee and of $1,199, conveyed to the railway company, its successors and assigns, so much of their land as was within such filed route and an adjoining triangle of sixty-hundredths of an acre at the northwest end of the strip—about five and one-half acres in all. The deed of conveyance contained this provision:

"And in consideration of the premises it is hereby mutually agreed and covenanted by the respective parties hereto that the grant of land herein contained is made and received upon the following conditions—that is to say:

"*First.* That the said party of the second part shall make,

erect and build, within three months after the completion of laying the tracks over the route of said railway company, and thereafter maintain, a passenger station upon the aforesaid piece of land, where the same at the northwesterly part thereof is more than one hundred feet wide.

"*Second.* [Provides that no building shall be erected on the land conveyed except for railroad purposes.]

"*Third.* That the said party of the second part shall forthwith, from the date hereof, begin to, and lay, make, construct and keep in repair, and forever thereafter maintain, a double-track railway upon and over the said strip of land of one hundred feet in width hereinbefore described.

"*Fourth.* [Provides for re-entry by the grantors, their heirs, executors, administrators or assigns in case of refusal or neglect 'to lay, make, construct and keep in repair and thereafter maintain a double-track railway over and upon said lands,' or 'to locate, build and maintain thereafter a passenger station upon the portion thereof as above described and required.']"

Shortly after this conveyance the grantee began the construction of a railroad upon its filed route, and on July 1st, 1890, had laid over its whole length one continuous track, upon which trains were run, and a second track from its western terminus for a distance of about three thousand and nine hundred feet. The roadbed was graded throughout of sufficient width for two tracks, except for about four thousand feet from the easterly terminus, where a single-track trestle was built. Between July 1st, 1890, and December 1st, 1891, the second track mentioned was continued easterly about two thousand two hundred feet, extending over about two-thirds of the length of the strip acquired from Reichard and Hume; and within the same time there was also constructed a second track, from a point about four thousand feet west of the bridge over Arthur Kill for a distance of three thousand three hundred and fifty-five feet to the westward. Since then there has been no railroad construction, except for increasing the storage yard at the western terminus and for connecting near there with the Lehigh Valley railroad. Since July 1st, 1890, the

company has continuously operated its railroad in carrying coal and freight. It has never operated it as a passenger road or carried passengers, except upon excursions. It has never constructed any passenger stations. The portions of a second track constructed have been in constant use as sidings.

On June 28th, 1893, by deed of that date, Frederick A. Reichard conveyed to William H. Salter his undivided half part of the one-hundred-acre tract first mentioned, subject to the conveyance to the railway company, and assigned to the grantee all his rights under that conveyance and "of, in and to all and every of the covenants, agreements and conditions of the defendant therein specifically set forth and the land therein described to which the same was subject." On October 16th, 1894, William H. Salter conveyed and assigned to Edith M. Sergeant and A. Paluel de Marmon the premises and rights conveyed and assigned by the deed last stated. On October 9th, 1896, under decree in Chancery, made June 9th, 1896, on a bill for partition of the whole property, wherein Andre Paluel de Marmon was complainant and Edith M. Sergeant and William H. Hume were defendants, Roderick Byington, a special master in chancery, after public sale, gave a deed purporting to convey to Edith M. Sergeant and Andre Paluel de Marmon the five-and-a-half-acre tract conveyed by Reichard and Hume to the defendant. On October 16th, 1899, Edith M. Sergeant and her husband and Andre Paluel de Marmon gave a bargain and sale deed purporting to convey said tract and the grantors' right therein to John Vernou Bouvier, Jr., the plaintiff below.

The facts above stated are condensed from a written stipulation of the attorneys of the parties produced and offered at the trial. The only additional evidence was testimony, for the defendant, in attempted excuse for the non-completion of the contemplated double-track railway. The trial judge was, among other things, requested to charge the jury that if they should find that either of the conditions of the deed of March 22d, 1889, was broken before Salter took his deed, or before his grantees took theirs, or before the master's sale and conveyance, or before the deed to the plaintiff was given, then,

in either case, the plaintiff was not entitled to maintain his action; and further, that the right of entry, for condition broken, was not subject to partition, and the land in possession of the defendant was not subject to be sold in such a suit. He refused so to charge, and directed the jury as follows:

"If you find that the company has failed to complete the laying of a double-track railway over the land in question, in accordance with the conditions of the deed, within a reasonable time, and that such reasonable time had elapsed before this suit was brought, your verdict should be for the plaintiff, otherwise it should be for the defendant."

The jury rendered a general verdict in favor of the plaintiff.

For the plaintiff in error, *Edward Q. Keasbey.*

For the defendant in error, *Richard V. Lindabury.*

The opinion of the court was delivered by

COLLINS, J. It is unnecessary to state the various exceptions sealed at the trial on rulings assigned for error in this court. They are sufficient to present the questions argued, of which we will now dispose. It is conceded that, by the deed of March 22d, 1889, the grantee took an estate upon condition subsequent; and that, upon a breach, the grantors might re-enter the land conveyed as of their former estate. I will take up, in order, the contentions of the plaintiff in error:

(1) *That neither of the conditions imposed was in fact broken.* It is plain that a failure to lay two railroad tracks for the whole length of the one-hundred-foot strip, within a reasonable time after the conveyance, was a breach of the third condition. We are satisfied with what was said on this subject by Chief Justice Depue, in the Supreme Court, when the case was there on a special verdict held abortive because silent on essential matter. *Bouvier v. Baltimore and New York Railway Co., 36 Vroom* 313. Whether a double track over the whole route would not have been needful for performance of

such condition need not be decided. The verdict establishes that the time that had elapsed when the suit was brought was more than reasonable for the purpose. Without doubt a much shorter time would have been unreasonably long.

(2) *That a tender back of the consideration money was a prerequisite to re-entry.* No authority is stated for this proposition, and it seems entirely unsound. The conditions of the conveyance must be presumed to have entered into its consideration.

(3) *That a breach of the third condition gave a right of re-entry on the one-hundred-foot strip alone.* The contention is that the conveyance was of two separate parcels, and that a breach of the third condition could have no effect with respect to the triangle adjoining, on the northwest, the one-hundred-foot strip that lay within the filed route of the railroad. We do not so interpret the instrument. The conveyance was of a single tract, describing it by metes and bounds. It was not even provided that the passenger station contemplated should be wholly within the northwest triangle. The conveyance was plainly an entirety.

(4) *That performance of the conditions of the conveyance was waived.* There was no evidence of any waiver. Mere delay in asserting the right of re-entry cannot prejudice that right where the question of performance itself is one of reasonable time. Indulgence in such a case is no waiver.

(5) *That there was incidental error in the charge.* An assumption of the trial judge of a purpose of the grantors, in imposing conditions on their conveyance, that their remaining land should be made more valuable and accessible, is criticised. The idea seems to be that no such purpose was expressed, and that the remarks to the jury on that subject bore unfairly on the question of reasonable time of constructing a double-track railway over the strip conveyed. We see no ground for criticism. The purpose suggested was inherent in the premises.

(6) *That the plaintiff below showed no right in himself,* (*a*) because a right of entry for condition broken is not transferable after breach, (*b*) or, if at all, not in partition proceedings.

There seems to be no good reason why, even before June 28th, 1893, the date of the deed given by Reichard to Salter, a double-track railway might not have been constructed over the one-hundred-foot strip conveyed by the deed of March 22d, 1889, which was made on condition of such a construction. Consequently, if a right of entry for condition broken cannot, after breach, be legally assigned, the trial judge should have complied with some, or one, of the requests to charge, above recited, that were based on that doctrine.

I find nothing definite said by the old reporters or law writers on the subject of transfer of rights of entry for condition broken, until Littleton, treating of estates upon condition, after noting the requirement of the law as to the reserving of rent, wrote thus, as prefatory to a statement that the grant of the reversion of leased lands did not convey a right of entry for breach of condition to pay rent: *"Le second chose est, que nul entrie ou re-entrie (que est tout un) peit etre reserve ne done a ascun person, forsque tantsolement al feoffor ou al donor, ou al lessor, ou a lour heires; and liel re-enter ne poyt estre grant a un auter person."* The date of the publication of the *Tenures* is unknown, but Littleton died A. D. 1481. The statute of uses (27 *Hen. VIII., c.* 10), passed A. D. 1535, gave opportunity for much amelioration in the transfer of rights in land, but, beyond the introduction of conditional limitations, by which estates might be granted in remainder, on breach of condition of the first grantee's title, there seems to have been no judicial modification of Littleton's doctrine; and no legislative relief, except that, in 1540, by 32 *Hen. VIII., c.* 34, the benefit of conditions in leases, for life or years, reserving rent, were allowed to pass with the reversion.

On the other hand, in the same year, parliament enlarged the Pretended Titles act of A. D. 1377 (1 *Rich. II., c.* 9, by 32 *Hen. VIII., c.* 9), forbidding bargain, sale or purchase of rights or titles in land where the grantor was not in possession. Not long afterwards Chief Justice Montagu declared that this statute was largely affirmatory. *Partridge* v. *Strange, Plowd.* 77, 88.

Coke, writing before A. D. 1628, in his comment on Littleton's declaration, gives the reason of the doctrine as follows:

"*Que nul entrie*, &c.    Here Littleton reciteth one of the maximes of the common law; and the reason hereof is for the avoyding of maintenance, suppression of right and the stirring up of suites; and therefore nothing in action, entrie or re-entrie can be granted over: for so under colour thereof pretended titles might be granted to great men whereby right might be trodden downe and the weake oppressed which the common law forbiddeth as men to grant before they be in possession."    *Co. Litt.* 214 *a*.    About the same time, in his remarks upon *Lampet's Case*, 10 *Rep.* 46, 48, he wrote of "the great wisdom and policy of the sages and founders of our law, who have provided that no possibility, right, title nor thing in action shall be granted to strangers, for that would be the occasion of multiplying of contentions and suits, of great oppression of the people and chiefly of terre-tenants and the subversion of the due and equal execution of justice."

To the same effect is the declaration in *Bacon's Abridgement*, the foundation of which work is generally attributed to Chief Baron Gilbert:

"A possibility, right of entry, or thing in action, or cause of suit, or title for a condition broken, cannot be granted or assigned over by law; for, if this were permitted, it would promote maintenance and prove prejudicial to such as, being able to contend with those with whom the original contract was, might find themselves depressed by a powerful adversary."    *Tit. "Assignment" A*, and substantially the same statement, *tit. "Grants" D*.    Mr. Hargrave, in *note* 212 on *Coke's Littleton*, expresses the same view.

It is needless to quote other writers or judges.    All who give a reason for the doctrine ascribe it to the judicial desire to prevent maintenance.

A distinction not always clearly made should, however, be borne in mind.    Before breach, as in case of any determinable fee, there is in the grantor only a possibility of reverter.    4 *Kent. Com.* *11 *n*; *Nicoll* v. *New York and Erie Railroad Co.*,

12 *N. Y.* 121. After breach there is a vested right. Judge Hare, in his note to *Dumpor's Case, Sm. Lead Cas.* \*112, perspicuously states this distinction: "Before breach the reason why an assignee cannot take advantage of a condition really depends on the inherent incapacity of the condition itself. But after breach the condition itself is gone and there arises in its stead, whatever may be its terms, in the case of freehold estates, at all events when created by a common law conveyance, a right or title of entry which is as little capable of assignment as the condition, although the obstacle to its assignment is of a different nature, arising out of the policy of the common law and the provisions of the statute of maintenance which forbade the sale or transfer of claims or demands unsustained by possession and resting solely in entry or action."

In most of the states of the union it has been assumed that the English doctrine of non-transferability of rights of entry for condition broken is the law; and so it well may be as to attempted transfers before breach; but after breach it would seem that the test must be the existence or non-existence of the English law as to maintenance. Judge Hare, after the passage cited, argues that even in those states, like Pennsylvania, where it had been declared that the English statutes on that subject had never been adopted, an incapacity of transfer should still be maintained, for the reason that the title of the grantee on condition will endure until re-entry, but the argument is aside from the point. It is not the land, but the right of entry, that is the subject of the transfer. In Pennsylvania, after Judge Hare wrote, the question came before the Supreme Court for decision, and it was held, in a case where the condition was reserved to the grantor and his assigns, that the right of entry was subject to sale. Mr. Justice Rogers said: "This is a fair case for the application of the maxim *cessante ratione legis, cessat ipsa lex." McKissick* v. *Pickle,* 16 *Pa. St.* 140. In the case in hand it will have been noticed that the right of entry for breach of condition was reserved to the assigns, but I do not regard that as essential. I think that in

any case, wherever the English law against maintenance is not in force, a right of entry for condition broken should be held transferable after breach of the condition. Before breach I think transfer, to be legal, must be authorized by legislation.

In England, as before stated, by 32 *Hen. VIII., c.* 34, the benefit of conditions in leases for life or years reserving rent was allowed to pass with the reversion. By the Wills act of 1837 (1 *Vict., c.* 26, § 3) all rights of entry for condition broken were made devisable, and in 1844, by 7 & 8 *Vict., c.* 76, § 5, they were made assignable. This later legislation was the prototype of an enactment in this state, approved March 14th, 1851 (*Gen. Stat., p.* 881), by which, under the title "An act to authorize the transfer of estates in expectancy," such rights were included within an authority to devise, convey, assign or charge by deed contingent or executory interests and future estates and interests in expectancy in lands, tenements and hereditaments.

An attempt was made in the recent revision of some of our statutes to transfer the provisions of this one to the "Act concerning conveyances," where it appears as section 19 (*Pamph. L.* 1898, *p.* 676); but as the repealer of the original act (*Pamph. L.* 1898, *p.* 711) has the similar title of "An act to repeal sundry acts respecting conveyances," we may disregard this attempt—which is very desirable, as the legislation is meant to embrace devises, assignments and charges, and the new title may be deemed to be inadequate. The difficulty I find in relying, in all cases, on this statute inheres in the expression that it is only on the *happening of a contingency* that a right is to vest in the transferee. This language does not appear in 7 & 8 *Vict.,* and it seems to me that its effect must be to limit the authority of transfer, as far as rights of entry for condition broken are concerned, to a transfer before breach of the condition; and that is the contention of the plaintiff in error. It is suggested also that the proviso in the act, that no chose in action shall thereby be made assignable at law, excepts rights of entry after breach from its operation; but I do not take that view. Some judges have spoken of the right

after breach as a mere chose in action, but the designation is inaccurate. A right of entry is an interest in land. A chose in action is, perhaps, not definable with exactness, but it certainly is not that. It does not extend, even under modern legislation, beyond a right to recover debt or damages or some interest in personalty. · The Victorian statute included personal property and the proviso was appropriate. It probably was retained in our act through inadvertence, unless its application was intended to be to hereditaments having some characteristics of personalty.

In *Cornelius* v. *Ivins,* 2 *Dutcher* 376, our statute was given effect in the Supreme Court, in a case where it is not clear, from the opinion, whether the devise upheld was before or after breach. The decision, of course, is not controlling in this court.

But although it may be that the statute only authorizes a transfer before breach, I think a transfer after breach is also valid, for the reason that moved the Supreme Court of Pennsylvania to a like decision. · I would not say, as did that court, that a right of entry can be levied on and sold in execution, but I think that in this state it may be transferred at the will of the holder. In *Schomp* v. *Schenck,* 11 *Vroom* 195, 204, it was rightly held, in the Supreme Court, that the English law against maintenance is not in force in New Jersey. The opinion of Chief Justice Beasley, in that case, makes this very clear. He says: "By the act of November 24th, 1792 (*Pamph. L., p.* 794), Judge Paterson was authorized to collect and put in form all the statutes of England and of this state which then remained in force here, and Mr. Griffith, in referring to the revision that was the result of this authority, says that the compiler 'omitted, as inapplicable, the English statutes relative to the buying and selling of titles. 1 *Rich. II., c.* 9; 32 *Hen. VIII., c.* 9. As he did also those against maintenance. 1 *Edw. III., c.* 14; 20 *Eliz., c.* 4, &c. Also of champerty. 3 *Edw. I., c.* 25; 28 *Edw. I., c.* 11.' The question then arises, what was the meaning of this omission? I can perceive no other solution except the inference that Judge

Paterson considered them neither a part of the statute law of this state, nor as adapted to our circumstances. By the constitution of 1776 it was declared, in article 22, 'that the common law of England, as well as so much of the statute law as have been heretofore practiced in this colony, shall still remain in force, until they shall be altered by a future law of the legislature;' and when, therefore, this particular series of acts was not comprised in this accurate and authentic compilation of the laws in force, it seems manifest that such leaving out was a meditated exclusion. If it be said that such a rejection of the statute law did not affect the common law, and that, by the common law, maintenance was prohibited, my answer is, that since the publication of the body of selected laws just referred to, there is no trace of the prevalence of any part of such a doctrine, either in our practice, judicial *dicta,* or decisions. It is obvious that Mr. Griffith inferred that the entire doctrine of maintenance and champerty was thought by Judge Paterson to be 'inapplicable' to the polity of this state. And although in some of the older legal digests and commentaries the doctrine of maintenance is said to be a part of the common law, nevertheless I am strongly of the opinion that it would be altogether impracticable to ascertain of what rules such doctrine consisted, as embodied in that ancient system." He then goes on, most eruditely, to show that there is the best reason for believing that, although often spoken of, as appears above, by the old writers as part of the common law, maintenance is entirely the creature of English statutory law and of the judicial constructions of such law, and that the consequence is that, when this set of acts was designedly left out of our statute-book, there existed no rational ground for the contention that any part of the law of maintenance in any form remained in force in this state. He points out, also, the destructive effect on the doctrine of the act of March 17th, 1713–1714 (*Pat. L., p.* 6; *Gen. Stat., p.* 877, *pl.* 119), which gives to the grantee to uses "as full and ample possession" of lands as if he were "possessed thereof by solemn livery of seizen and possession." That statute alone seems to me to

authorize a transfer after breach of a right of entry for condition broken. It differs from the English statute of uses in many particulars, being far more liberal in its provisions. *Melick* v. *Pidcock,* 17 *Stew. Eq.* 525, 542.

I am aware that there is the weight of the opinion of Chief Justice Green, in the Supreme Court, in the case of *Southard* v. *Central Railroad Co. of New Jersey,* 2 *Dutcher* 13, that except for the act of March 14th, 1851, there could be no such transfer, but this aspect of the case was not presented to his mind.

It is said that choses in action have always been held in this state to be "not assignable" at law, except by statute. Such is the expression used in an opinion in this court. *Ruckman* v. *Outwater,* 4 *Dutcher* 571. Even taken literally, that would not preclude a different decision as to rights of entry for condition broken; for there are considerations other than the mere prevention of maintenance that have influenced the judicial attitude towards choses in action. The protection of the rights of the defendant against the assignor has been the main care of the courts, and is always afforded in enabling statutes such as that of this state. *Gen. Stat.,* p. 2591, *pl.* 340. But all that is meant by such an expression as that quoted is that a chose in action was not assignable so as to permit the assignee to sue in his own name in a court of law. Subject to that restriction, even in England, from a very early day, choses in action have been assignable *in fact,* and no consideration of the prevention of maintenance has been allowed to prevail. *Dic. Part.* \*67; *Wald Poll. Cont.* \*202; *Masters* v. *Miller,* 4 *T. R.* 321, 340 *(Buller, J.).* That there was no inherent non-assignability appears from the fact that the restriction was never imposed on an assignee of the crown. *Id.*

Chief Justice Hornblower, in *Allen* v. *Pancoast, Spenc.* 68, cleared up the confusion that had existed on the subject, and Mr. Justice Carpenter, in *Parsons* v. *Woodward,* 2 *Zab.* 196, 206, said that the ancient rule that choses in action were not assignable only remained to give form to legal proceedings to collect them, so that ordinarily it was necessary to sue, at law,

in the name of the original claimant—the holder being treated rather as an attorney than as assignee.

In equity any possibility, right or expectancy may, for valuable consideration, be assigned. *Bacon* v. *Bonham,* 6 *Stew. Eq.* 614. I can see no reason to deny efficacy, at law, to a conveyance, devise or other transfer of a vested right of entry. There seems to be no technical obstacle in the way of such a transfer, and there certainly is no other.

We are next to inquire if there can be a compulsory partition of land in which the parties have only a right of entry for condition broken. If there can be no partition, then, of course, there can be no judicial sale, for that is a mere alternative which must be resorted to where lands are incapable of actual partition. I am of opinion that there can be no such partition. When this case was before the Supreme Court Chief Justice Depue said that, by the act of March 14th, 1851, the mere right of entry at common law was "converted into an actual estate." With deference, I must dispute that proposition. Whatever the scope of the act, it has no greater effect than to permit the transfer of the right; it does not, and cannot, affect its nature. In *De Peyster* v. *Michael,* 6 *N. Y.* 467, 507, the Court of Appeals of New York held that the enlargement of 32 *Hen. VIII., c.* 34, by extending it to conveyances in fee reserving rent, "only authorized the transfer of a right, and did not convert it into a reversionary interest or into any other estate." A division of the reversion destroys such a right, though assignable under that statute. *Co. Litt.* 215 *a; Tayl. Land. & T.,* § 296. A right of entry for condition broken is inherently indivisible. An entry by one of two or more joint grantors would inure to the benefit of all, and it is obvious that an attempt to sever the joint right before entry would be ineffectual, although doubtless, where the right is assignable, one of the joint owners may assign his interest. The fact of such assignment simply puts the assignee in the place of the assignor. I find nothing in any statute of this state extending partition, or sale in lieu thereof, to a right of entry for condition broken. Furthermore, partition, normally,

can be judicially compelled of such lands only as are in the possession of the parties to the proceedings. *Stevens* v. *Enders,* 1 *Gr.* 271; *Burroughs* v. *Dunlap, Id.* 284. Our legislation extending the right of partition to remaindermen and reversioners depends upon the consent of the owner of the particular estate in possession. *Smith* v. *Gaines,* 12 *Stew. Eq.* 545. Entry, or its equivalent, is essential to the perfection of the right. Probably the beginning of a suit in ejectment will suffice. It was so adjudged in the Supreme Court, in *Cornelius* v. *Ivins, ubi supra,* and I do not question that decision, but until entry, or what is equivalent thereto, partition of the lands involved seems to me impossible. A right of entry for condition broken may be waived. The English statute of 7 & 8 *Vict.,* above cited, was repealed in the year following its enactment. The present act of 8 & 9 *Vict., c.* 106, extends only to "a right of entry, whether immediate or future and whether vested or contingent, into or upon any tenements or hereditaments in England of any tenure." In *Hunt* v. *Bishop,* 8 *Exch.* 675, it was held that the new statute did not embrace rights of entry for condition broken, and in *Jenkins* v. *Jones,* 9 *Q. B. D.* 128, 131, Jessel, Master of the Rolls, suggests that the reason why a right of entry for condition broken is not assignable by virtue of that statute is that it was at the election of the person entitled to enter whether he would take advantage of the breach of the condition; it was not yet an estate. It was said in the Supreme Court, in this case, that the grantee of an estate on condition is not interested in the partition proceedings, and that a decree to which all persons in interest are parties is, as against him, effectual; but it must be remembered that the matter is jurisdictional, not as to persons only, but as to subject-matter. The doctrine laid down in the opinion of Chief Justice Beasley, in *Munday* v. *Vail,* 5 *Vroom* 418, which has become a classic on this subject, applies in full vigor.

There are cases holding that where a condition is imposed upon an estate for the benefit of other lands of the grantor it will pass with the title of the other lands. *Merrifield* v. *Cob-*

*leigh,* 4 *Cush.* 178, is such a decision. In the present case, had the sale been of the one-hundred-acre tract, there would be room for argument that the benefit of the condition passed to the purchaser, but what was attempted was an independent decretal sale of the five and one-half acres held by the railway company. I can find no support therefor.

But this conclusion does not dispose of the case adversely to the judgment. The purchasers at the sale in partition already held the right of entry in common with Hume. Although they took no title through such attempted sale, their previous right in the property remained. In their bargain and sale deed to Bouvier that right was embraced. Bouvier and Hume then held in common a right of entry or alternative suit. Either could exercise that right. One tenant in common may alone bring ejectment. *Gen. Stat., p.* 1285, § 24. If the defendant had the right at all to object to non-joinder of the other, which is doubtful, he could only do so by notice, under section 37 of the Practice act. *Gen. Stat., p.* 2539. Unless otherwise provided, the practice in personal actions is applicable in ejectment. *Gen. Stat., p.* 1283, § 9.

The direction to the jury was not erroneous.

It is assigned for error that the verdict was against the clear weight of evidence; but that is not assignable for error. *Flanigan* v. *Guggenheim Smelting Co.,* 34 *Vroom* 647.

I shall vote to affirm this judgment.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, KRUEGER, ADAMS, VREDENBURGH, VROOM.    13.

*For reversal*—None.