[No. 1739, May 19, 1915.]
## GURULE v. DURAN.

### SYLLABUS BY THE COURT.
1. There is no abuse of discretion, on the part of the trial court, in overruling a motion filed by plaintiff, asking leave of court to amend a reply and to be allowed to introduce further and additional evidence, after evidence has been taken upon issue joined, and a cause is submitted to the court for decision, where such party has theretofore had ample opportunity to plead the new matter, and no showing is made excusing failure to so do.        P. 351.

2. The owner of real estate, having failed to make return for taxation, cannot question the validity of an assessment of her property to "unknown owners," although she was in actual occupancy of the land, and although the assessor by making inquiries and investigating the records of his office might have ascertained the fact of such title and occupancy.
        P. 352

3. Payment of taxes on the improvements on real estate does not consttitute a payment of taxes on the land.
        P. 352

4. The statute of Henry VIII (32 Hen. VIII, c. 9), which prohibits under prescribed penalties the buying or selling of any pretended right or title to land, unless the vendor is in actual possession of the lands, or of the reversion or remainder, is not in force in this state, because of the fact that it is not applicable to our condition and circumstances.

P. 353

Appeal from District Court, Bernalillo County; H. F. Raynolds, Judge.

Action by Julianita Apodaca de Gurule against Thomas R. Duran. From a judgment for defendant, plaintiff appeals. Affirmed.

JOHN W. WILSON and W. C. HEACOCK of Albuquerque, for appellant.

The court erred in refusing to grant leave to amend the reply and to permit appellant to introduce additional testimony.

Bliss on Code Plead., sec. 431, p. 664; Cook v. Spears, 2 Cal. 409; Hayden v. Hayden, 46 Cal. 232; Cook v. Croisan, 36 Pac. 532; Blood v. Fairbanks, 48 Cal. 171; Bean v. Stoneman, 37 Pac. 777; Valencia v. Crouch, 91 Am. Dec. 589; Walsh v. Wash. Ins. Co., 32 N. Y. 427; Bryan v. Tormey, 24 Pac. 319; Palmer v. Jones, 23 N. Y. S. 584; Greer v. Squire, 37 Pac. 545; Randolph v. Barnett, 16 Pet. 138; Dent v. Sup. Court, 95 Pac. 672; Milde v. Reynolds, 61 Pac. 932; Nicoll v. Weldon, 63 Pac. 63; Lottman v. Barnett, 62 Mo. 170; Bliss on Code Plead. (3d Ed.), sec. 428; Ramsey v. Cortland Cattle Co., 13 Pac. 247.

The assessment by the assessor in the name of "unknown owners" was a legal fraud on the rights of appellant, and void.

Olive v. Robinson, 58 Ala. 46; Grandforks County v. Frederick, 125 Am. St. R. 621; Parham v. Haverhill Fiber Co., 3 Atl. 312; Vestal v. Morris, 39 Pac. 960; L'Engle v. Florida C. R. R. Co., 21 Fla. 353; Martin v. White, 100 Pac. 290.

The statute 32 Henry VIII, chapter 9, is in force in New Mexico.

Dye v. Crary, 12 N. M. 460, Const. N. M., sec. 401; Sandoval v. Albright, 14 N. M. 345.

Sale of land by a disseisee in New Mexico is void.

4 Kent. Comm. 446; Peck v. Heurich, 167 U. S. 624; Grant v. Hunsiger, 55 Am. Dec. 413; Tahlheimer v. Brickeroff, 15 Am. Dec. 321, 35 L. R. A. (N. S.) 731; Burnstein v. Hunts, 71 Ala. 260; Bunts v. Galligher, 5 Blatch. 481; Fed. Cas. 2133; Sands v. Highes, 53 N. Y. 287; Small v. Proctor, 15 Mass. 495; Wash. on Real Prop., vol. 3, 329.

VIGIL & JAMESON of Albuquerque, for appellee.

The order of the court refusing to file proposed second amended reply was a matter resting in the sound discretion of that court.

31 Cyc. 402; First Nat'l Bank v. Speed, 99 Pac. 697; Savings Bank v. Woodruff, 14 N. M. 502.

It was the duty of appellant to return her land for taxation.

Straus v. Foxworth, 16 N. M. 422.

Assuming that the statute of 32 Henry VIII is in force it has no application to tax sale and the like.

Houston v. Scott, 35 L. R. A. (N. S.) 729.

### OPINION OF THE COURT.

ROBERTS, C. J.—This action was instituted in the court below by appellant against the appellee to quiet title to certain real estate, described in the complaint. The complaint was in the ordinary form, containing only the statutory allegations. Appellee answered, alleging that he was the owner of the real estate described in appellant's complaint, by virtue of a deed of conveyance executed to him by one Pitt Ross, who had title to said land under a tax deed issued by the treasurer of Bernalillo

county, pursuant to law, and that he was entitled to the
possession of the land in question. He asked that his title
be quieted as against the appellant. To the answer ap-
pellant filed a reply setting up certain matters which she
claimed rendered the tax deed under which Ross claimed
title void and of no effect. Issue being joined, the parties
proceeded to trial, and a great deal of evidence was intro-
duced, whereupon appellant asked leave of court to amend
her reply. As the proposed reply changed the issues, leave
was granted upon condition that appellant pay the cost,
which she elected to do. Thereupon the court adjourned
the trial so that appellee could prepare to meet the new
issues. The amended reply alleged that the land had
been assessed in the name of her husband, and the taxes
thereon paid. In other words, she pleaded a double as-
sessment of the property. She also alleged that, at the
time Ross conveyed to Duran, she was holding possession
of said land, adversely to Ross. The first trial was begun
on the 8th day of September, 1913, and was adjourned, as
before stated, in order that appellant might file an amend-
ed reply. The reply having been filed, on the 2d day of
October, 1913, the trial was resumed, and after all the
evidence was taken and the cause was submitted to the
court appellant asked leave of court to file a second amend-
ed reply, and for permission to introduce "more, addi-
tional, and further testimony." The court overruled the
motion, and this action of the court is the first alleged
error discussed by appellant.

[1] The appellant alleged, in her second amended re-
ply, leave to file which was sought and denied, that Ross
and the then assessor of Bernalillo county had been guilty
of fraud; the specific acts of fraud being alleged in the
listing of said property for taxes. Appellant, in her mo-
tion asking leave to file this amended reply, fails to set
forth any excuse for her failure to incorporate the alleged
facts in her original or first amended complaint, and it is
not claimed that the said amendment was desired for the
purpose of conforming the pleadings to the facts proved.

"The allowance or refusal of amendments is a matter which is largely within the sound discretion of the trial court. The question of advisability is a question of fact which is to be determined by that court, and the determination thereof will be reviewed only in case the court grossly abuses its discretion, but the presumption is always against such abuse." 31 Cyc. 368.

There is no abuse of discretion on the part of the trial court in overruling a motion filed by plaintiff asking leave of court to amend a reply and to be allowed to introduce further and additional evidence after evidence has been taken upon issue formed, and a cause is submitted to the court for decision, where such party has theretofore had ample opportunity to plead the new matter, and no showing is made excusing failure to so do. The trial had been halted once, in order that plaintiff might amend her reply. So far as this record shows, she was fully cognizant of all the facts she sought to incorporate in her last proposed amendment from the inception of the litigation. It would tend to confusion and endless litigation if parties were permitted to allege their facts and try their cases by piecemeal.

[2] Appellant questions the validity of the tax proceedings because she had been in the actual possession of the land for many years, and her possession and title were such that the assessor, by making inquiries and by investigating the records of his own office, could have ascertained that she was the owner of the property and therefore should not have listed it to "unknown owners." She did not return the property for taxation. The construction put upon section 25, c. 22, Laws 1899, by the territorial Supreme Court in Straus v. Foxworth, 16 N. M. 442, 117 Pac. 831, disposes of this point against the contention of appellant. Daugherty v. Murray et al., 18 N. M. 35, 133 Pac. 101, discusses the assessment of property to unknown owners, and is also conclusive against appellant.

[3] Appellant sought to show that the taxes had been paid by introducing an assessment on improvements on government land, against her husband and his payment

thereof, which she identified as the land in question. We think the court properly held that the payment of taxes on improvements on land is not payment on the land itself.

[4] It is lastly urged that under the common law of England, which was adopted as the rule of practice and decision in this jurisdiction in 1876, the conveyance of land held adversely is an offense, punishable by fine and imprisonment. The declaratory act of Henry VIII (32 Hen. VIII, c. 9), prohibits under prescribed penalties the buying or selling of any pretended right or title to land, unless the vendor is in actual possession of the land or of the reversion or remainder. Appellant contends that the facts in this case show that she was in adverse possession of the land in question at the time Ross conveyed the same to appellee; hence, under the foregoing rule of the common law, appellee took no title to the same. Waiving the question as to whether the facts show adverse possession, we will proceed to a consideration of the more vital and important question, viz., is this rule of the common law in force in this state?

While the territorial Legislature, in 1876 (C. L. 1897, § 2871), provided that "in all the courts in this territory the common law as recognized in the United States of America, shall be the rule of practice and decision," and the territorial Supreme Court held that the effect of this statute was to ingraft upon our system of jurisprudence the common law, or lex non scripta, and such British statutes of a general nature not local to that kingdom, nor in conflict with the Constitution or laws of the United States or the territory, which were in force at the time of our separation from the mother country (Browning v. Estate of Browning, 3 N. M. 659, 9 Pac. 677), it further held that only so much of the common law was adopted as was applicable to our conditions and circumstances. This construction of the statute quoted has been consistently adhered to for almost 30 years. Any other construction would have resulted in intolerable confusion and hardship, nor could it be properly assumed that it was the intention of the Legislature to adopt all the common law of

England which was in force at the time of our independence, for we were living under a different form of government, with vastly different conditions surrounding our people. Naturally the courts held that only such part of the common law as was applicable to the changed condition and circumstances under which we lived was adopted and in force here.

The English doctrine of maintenance arose from causes peculiar to the state of society in which it was established. The Supreme Court of Iowa, in the case of Wright v. Meek, 3 Greene, 472, in discussing the causes which led to the establishment of the doctrine and the object to be accomplished, said:

"The great reason for the suppression of champerty and maintenance was the apprehension that justice itself was endangered by their practices. Blackstone, 4 Com. 138, speaks of this offense as perverting the privileges of the law into an engine of oppression. In the case of Slywright v. Paige, 1 Leon, 167, it was said by the whole court of common pleas that the meaning of the statute of the 33 H. 8, concerning maintenance, was to 'repress the practices of many, who, when they thought they had title or right to any land; for the furtherance of their pretended right, conveyed their interest or some part thereof, to great persons, and with their countenance did oppress the possessors.' The power of great men to whom rights of action were transferred, in order to obtain support and favor in suits brought to assert these rights, the confederacies which were thus formed, and the oppressions which followed from the influence of great men, in such cases, are themes of complaint in the early books of the English law. While the power of nobles and great men was felt in the administration of justice, these practices seem to have produced real and great evils. In that state of things, instead of invigorating and purifying the administration of justice, as the direct

remedy for such evils, the laws concerning champerty and maintenance were established as penal regulations, intended to operate upon the parties to these transactions. It was a principle of the common law that a right of action could not be transferred by him who had the right to another. When we seek the reason of this rule, we find it in the motive already mentioned, and apprehension that justice would fail, and oppression would follow, if the right of action might be assigned. 'Nothing,' says Coke (Co. Lit. 114), 'in action entry or re-entry can be granted over, for so under color thereof, pretended titles might be granted to great men, whereby right might be trodden down and the weak oppressed.' This doctrine, it will be seen, has grown out of the inequality of society in England. The rich, the great, and noble, should not come in with their wealth and influence, and maintain suits by which the weak and poor could be oppressed. In modern times the doctrine has, to a great extent, yielded, and the evils, under a pure and firm administration of justice, are little felt. Champerty and maintenance are now seldom mentioned as existing in fact, or as producing any considerable mischief."

In this country every man is equal before the law, and in our courts the rich man, or the man of power and influence, stands on the same level as the friendless and impoverished man. If he does not, our courts do not measure up to the high standard required by the people who have created them and invested them with power, as was said by the Iowa court in the case last cited:

"In this country, with wise and wholesome laws, enjoying as we do a political and social equality, which never can exist under the institutions of England, with the administration of justice alike accessible to the poor and the rich, where oppression, such as give rise to the doctrine of maintenance and champerty in England,

Gurule v. Duran, 20 N. M. 348.

> cannot exist, it is almost impossible to conceive
> how a case of champerty or maintenance can oc-
> cur; it is a part of our judicial policy not to shut
> our suitors, or close the temple of justice against
> those who resort thither for an adjustment of
> their legal rights.  Neither should litigation be
> incited, or improperly or unlawfully encourag-
> ed, so as to amount to oppression."

Here we have vast tracts of land, many of them owned
by nonresidents, others by local parties who seldom visit
the same.   Transfers of real estate are freely made, in
good faith, in reliance upon the paper title as shown by
an abstract.   It has been, we believe, the uniform practice
to pass title to real estate, whether in or out of possession.
To now hold that this obsolete British statute is in force
in this state would deprive many honest and good-faith
purchasers of title to real estate, and subject them to fine
and imprisonment.   We do not think this statute can be
held applicable to the conditions and circumstances of the
people of this state.

We are not unmindful of the fact that some of the
courts have held that this statute became a part of the
law of their states, by reason of the adoption or continu-
ation of the common law of England therein, but many
others have held that it is obsolete and not applicable to
present conditions.   The cases on the subject will be
found collected in notes found on pages 868 and 869, 6
Cyc.  In many of the states the rule has been abolished
by statutes, and it has even been repealed in England.

In support of our conclusion, we cite Hall's Lessee v.
Ashby, 9 Ohio, 96, 34 Am. Dec. 424; Bouvier v. Balti-
more & New York Ry. Co., 67 N. J. Law, 281, 51 Atl.
781, 60 L. R. A. 750; Mathewson v. Fitch, 22 Cal. 86;
Campbell v. Everts, 47 Tex. 102; Schaferman v. O'Brien,
28 Md. 565, 92 Am. Dec. 708.

Finding no error in the record, the judgment will be
affirmed, and it is so ordered.

PARKER, J., and MECHEM, District Judge, concur.