CITY OF GRAND RAPIDS *v.* PERE MARQUETTE RAILWAY CO.

1. ADVERSE POSSESSION—PERMISSIVE USER CANNOT BECOME AD-
   VERSE WITHOUT NOTICE TO OWNER.
   Where entry is permissive, possession cannot become adverse
   until direct notice of hostile claim is given owner.

2. SAME—RIGHTS OF ONE ENTERING UNDER TENANT OR LICENSEE.
   One who enters under tenant or licensee occupies same position
   as to acquiring title by adverse possession as the one under
   whom he. takes.

3. SAME—POSSESSION MUST BE HOSTILE TO OWNER.
   To be adverse, possession must be hostile to owner.

4. SAME—ENTRY UNDER LICENSEE· COULD NOT BE ADVERSE IN
   ABSENCE OF NOTICE.
   Where railroad company's entry upon city street was permissive
   and in pursuance of its agreement with licensees of city, it
   had no different status as against city than had licensees, and
   therefore in absence of notice of adverse claim its possession
   was not adverse to city.

5. LICENSES—LICENSOR MAY TREAT TRANSFEREE AS TRESPASSER OR
   MAY CONTINUE LICENSE.
   While attempted transfer of right of licensee terminates license,
   and licensor has right to treat transferee as trespasser, yet it
   is optional with him to do so, or to continue or renew license,
   and owner's acquiescence in possession of transferee without
   interference or prohibition may be such as to be regarded as
   amounting to continuance or renewal of license in favor of
   successive occupants.

6. ADVERSE POSSESSION—HIGHWAYS AND STREETS—CITY MAY AS-
   SUME TRANSFEREE OCCUPIES UNDER LICENSE.
   Where railroad tracks were laid in city street in pursuance of
   license from city, it was under no obligation to make inquiry
   to determine whether conditions had arisen which caused or
   called for revocation of license, but it could assume that pos-
   session was under license until contrary was definitely brought
   to its notice.

---

Hostility as essential element in case of adverse possession of
railroad right of way, see annotation in L. R. A. 1916B, 661.

7. RAILROADS—HIGHWAYS AND STREETS—USE OF STREET—EQUITY.
    In city's suit to remove side tracks from street, railroad company's contention that such removal will cause industrial distress raises no equities cognizable by court, but said argument should be made to city commission.

Appeal from Superior Court of the City of Grand Rapids; Verdier (Leonard D.), J. Submitted October 23, 1929. (Docket No. 92, Calendar No. 34,269.) Decided December 3, 1929.

Bill by the City of Grand Rapids against the Pere Marquette Railway Company to remove a side track from a street. From a decree for plaintiff, defendant appeals. Affirmed.

*Fred N. Searl (Jewell, Face, Messinger & Grettenberger,* of counsel), for plaintiff.

*Norris, McPherson, Harrington & Waer,* for defendant.

FEAD, J. This is a suit to require defendant to remove a side track from Richmond street, formerly North street, in the city of Grand Rapids. Defendant claims prescriptive easement through adverse possession of the street for over 15 years, prior to the enactment of Act No. 46, Pub. Acts 1907, superseded by 3 Comp. Laws 1915, § 12311, par. 3. Only the general situation will here be set up as a more detailed statement of the early history of the track may be found, by any one interested, in *Kent Furniture Manfg. Co.* v. *Long,* 111 Mich. 383.

The track was originally laid in 1869 by A. B. Long & Sons, under license from the city council to construct it under direction of the city surveyor and to use it in connection with their sawmill, until revoked by the council. The Longs shortly after con-

veyed a half interest in it to Wonderly & Company, neighboring mill owner, each party having paid half the original cost and agreeing to pay half the expense of upkeep. The track was connected with the Grand Rapids & Indiana Railway Company's main line, ran on private property of the Longs, through North street, to and upon private property on which the Long and Wonderly sawmills were located. Some time later the carrier connection was changed to the main line of the Grand Rapids, Newaygo & Lake Shore Railway Company, which main line afterwards became part of defendant's system.

Between 1877 and 1881 the mills seem to have been closed and the track disconnected from the main line. In 1880 Kent Furniture Manufacturing Company purchased a mill site from Wonderly and obtained some sort of an assignment of half interest in the track and easement. In February, 1895, it obtained a formal quitclaim deed of the easement from the surviving partner of Wonderly & Company.

In 1882 Chicago & West Michigan Railway Company, predecessor of defendant, repaired the track to care for the Long and Kent plants. Because of dispute over title to some of the lands upon which the track lay, the connection with the main line was changed a few feet to property unquestionably belonging to the Longs. That part of the track in North street and beyond was not moved. The Longs continued to operate the mill until about 1893. The Kent company continued until about 1901, when it sold its land and interest in the easement. Other industries have been located on the old sites and are served by the track, which has been operated continuously since 1882 by defendant and its predecessors.

In 1891 and 1893 the Longs gave the railway company notice to remove the track from their private

premises, the property from North street to the main line of the railroad. In 1894 they brought ejectment proceedings against the railway company. In March, 1895, shortly after Kent Furniture Manufacturing Company had obtained the formal deed of the easement from Wonderly, the Chicago & West Michigan Railway Company and the Kent company filed a joint bill in chancery to restrain the ejectment suit. In the bill the Kent company claimed under the deed from the Longs to Wonderly and assignment to itself, an agreement with the Longs to remove part of the track to Long property, and the further agreement with the Longs and the railway company that the latter should repair and maintain the track in consideration of the increased facilities for obtaining freight for the Long and Kent plants. The railway company made no independent claim to easement in its own right, but, after setting up that it had kept the track in repair for 12 years and had invested considerable money to give proper freight facilities to the Long and Kent plants, declared its position as follows:

"And the said Chicago & West Michigan Railway Company, in reliance upon the said contract and of its investment as aforesaid, and the returns in freight amounting to several thousands of dollars each year therefrom, insists that it has a right to retain said track as long as the Kent Furniture Manufacturing Company insists upon the retention of the same for its use."

Plaintiffs prevailed on their theory. *Kent Furniture Manfg. Co.* v. *Long,* supra.

In 1914 the common council ordered the side track removed from the street and directed notice to be given the railway company and factory owners served by the track. Defendant's predecessor, Pere

Marquette Railroad Company, was notified of the resolution and wrote to the city clerk:

"For your information, I wish to advise that this company does not own or maintain the side track in North street, it being owned by the John Widdicomb Estate of Grand Rapids."

It is urged that this was a mistake because the writer did not know of the claim of adverse possession. It was evidently a mistake, because the Widdicomb company, which apparently had acquired both the Long and Wonderly interests through successive conveyances, had executed a deed of the easement to the railroad company in December, 1913. However, no correction of the mistake was ever communicated to the city. About 1921, negotiations of some sort were had between plaintiff and defendant, looking to an arrangement covering the use of the track. On March 10, 1921, the council adopted a resolution that all rights claimed by the defendant in the track be forthwith terminated.

Defendant contends that the entry of its predecessor in 1882 was adverse to the city and its possession continued hostile until it ripened into a prescriptive easement. It urges that the suit in 1895 involved only private property of the Longs, had no reference to the street, and does not militate against its present claim of adverse possession.

Where an entry is permissive, the possession cannot become adverse until direct notice of hostile claim is given the owner. *Weber* v. *City of Detroit,* 159 Mich. 14 (36 L. R. A. [N. S.] 1056); *Houghton County* v. *Massie,* 215 Mich. 654; *United States Gypsum Co.* v. *Christenson,* 226 Mich. 347.

"It is settled law that a tenant or licensee cannot convert his occupancy under license into an adverse

holding without actual notice to the holder of the legal title.'' *Standard* v. *Jewell,* 206 Mich. 61.

''The possession of one who enters upon land under license from another claiming title, and who occupies the land for a series of years, doing nothing inconsistent with his holding as licensee, does not begin to be adverse until he notifies the licensor of a hostile claim.'' *City of St. Joseph* v. *Seel,* 122 Mich. 70 (syllabus).

One who enters under a tenant or a licensee occupies the same position as to acquiring title by adverse possession as the one under whom he takes. *Butler* v. *Bertrand,* 97 Mich. 59. To be adverse, possession must be hostile to the owner (*Seifferlein* v. *Foerster,* 218 Mich. 179), and under claim of ownership (2 C. J. p. 125).

Applied to the facts here, the above well-established principles of law are determinative. Because of facts, it is not necessary to consider presumptions which are effective only when facts are wanting.

The entry of the Chicago & West Michigan Railway Company upon the track was permissive because it was not by independent act but was in pursuance of an agreement with and, therefore, under the licensees of, the city. It had no different status as against the city than had the licensees. The character of the entry is convincingly established through the suit in 1895. While that action involved only private property of the Longs, the whole track was repaired by the railway company under one agreement, at one time, and for one purpose. Without evidence or apparent reason for it, it cannot be inferred that the parties to the single agreement contemplated division, into sections, of rights to the track, or severance of the license as between the part on North street and that located on private property, or that the licensees surrendered their control of any part of it.

There was nothing in the occupancy of the railway company inconsistent with its holding under the license and the licensees. It gave no notice of adverse claim. It did no acts which would give notice to the city of adverse possession. Although of late years there have been negotiations and disagreements between plaintiff and defendant concerning the track, the latter never made. claim of hostile ownership until the answer in this suit was filed. On the contrary, it gave plaintiff express notice that it had no title when in 1914 it was called upon to remove its tracks. Defendant has failed to show adverse possession.

. Defendant also contends that, because the original Long firm was dissolved, was succeeded by a new Long firm, and a partner of the latter died, because the license was assigned from time to time, and because of the notices the Longs gave the railway company to vacate in 1891 and 1893, the license was revoked, and the possession thereafter was adverse. Aside from the fact that hostile possession is disproved by the facts, the contention is untenable.

"The possession of the owner cannot be disturbed by the adverse act of a licensee, any more than of a lessee. In both cases his possession is the possession of the owner, and his grantee or assignee but steps into his shoes, and takes *cum onere*. While an attempted transfer of the right of the licensee terminates the license, and the licensor has the right to treat the transferee as a trespasser, yet it is optional with him to do so, or to continue or renew the license. His acquiescence in the possession of the transferee, without interference or prohibition, may be such as to be regarded as amounting to a continuance or renewal of the license in favor of successive occupants." *Cameron* v. *Railway Co.,* 60 Minn. 100 (61 N. W. 814).

The city was under no obligation to make inquiry to determine whether conditions had arisen which caused or called for revocation of the license. It could assume that possession was under the license until the contrary was definitely brought to its notice.

Defendant's contention that removal of the track will cause industrial distress raises no equities cognizable by a court. The argument should be made to the city commission.

Decree is affirmed, with costs.

NORTH, C. J., and BUTZEL, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.