Edwards *v*. Griffin.

5-1483                                310 S. W. 2d 798

Opinion delivered March 10, 1958.

*S. M. Bone* and *Chas. F. Cole,* for appellant.

*W. M. Thompson* and *Erwin & Bengel,* for appellee.

Carleton Harris, Chief Justice.   Dr. E. A. Gibbons, a non-resident, owned certain lands in Independence

County. He died intestate in 1918, and was survived by his widow, Mrs. Mina Gibbons, and three children, Mrs. Marie Wanderscheid, Ralph Z. Gibbons and Cecil C. Gibbons. Mrs. Mina Gibbons had only a life estate in the property.

Appellee, Clyde Griffin, leased these lands from Mrs. Gibbons, for the term of five years, the lease to expire December 31, 1955, and later obtained another lease from Mrs. Gibbons which was to commence upon the expiration of the first lease, and was to run another five years, expiring December 31, 1960. Mrs. Gibbons died October 12, 1955. On March 17, 1956, Edwards purchased the lands from the remaindermen, and being unable to obtain possession of the property from Griffin and his sub-tenant, Barney Young, instituted suit in the Chancery Court asking that appellees be restrained and enjoined from interfering with his right to enter said lands. The case was transferred to Circuit Court, and after preliminary motions had been disposed of, proceeded to trial. The jury returned a verdict in favor of appellees for the possession of the property under the terms of the lease; judgment was accordingly entered, and from such judgment comes this appeal.

Appellant contends that, after the death of Mrs. Gibbons, the appellees became tenants by sufferance, or merely at will; contends that it was necessary that the lease, (executed in September, 1955, by Mrs. Gibbons) in order to remain in effect, be ratified in writing by the remaindermen, and that there was no written ratification of the lease by them; and finally, that appellees' defense falls within the statute of frauds.

Appellant moved for an instructed verdict at the conclusion of his evidence, and at the conclusion of all the testimony, on the premise that the lease, being executed by a life tenant, became void and expired upon Mrs. Gibbons' death, and that appellees were thereafter tenants by sufferance, or at will; that the heirs had not given any lease, and that the testimony showed no ratification by any of them as to the lease executed by Mrs. Gibbons. Both motions were overruled by the court.

As stated in the Iowa case of *Sanders* v. *Sutlive Bros. & Co.,* 163 Iowa 172, 143 N. W. 492[1]:

"It is a general rule that upon the death of a tenant for life, all interest of his lessee ceases. \* \* \* the lessee has no greater rights than his lessor, and the estate held by him is subject to be defeated by the death of a tenant for life. \* \* \* Upon the termination of the lease \* \* \* in the absence of facts showing to the contrary, the further occupancy of the lessees with the consent of the owners would be assumed to be as tenants at will. \* \* \* *The presumption thus created is not a conclusive one,*[2] but it is subject to be met and overcome by proof that the parties had, by their agreement or acts, determined upon or recognized a different tenancy.

"The lease under which appellants now claim the right of possession by its terms was to commence May 15, 1910. Before the arrival of that time, the lessor was dead. Her estate in the property having been limited to her lifetime, no rights could be claimed by the lessees under such second lease *unless after the death of the lessor it was adopted by her heirs,*[3] \* \* \*

"To ascertain the rights of the parties, we must therefore turn to the evidence, in its application to the question of adoption or acceptance of the contract of lease, and also as to the knowledge which the grantee in the deed had of the claim of Sutlive Bros."

In the *Sanders* case, the court held the proof established that the lease had been ratified by the remaindermen. Accordingly, whether appellees were merely tenants at

---

[1] The facts are very similar to the instant litigation. Margaret Rigler, wife of Lorenz Rigler, deceased, held only a life estate in certain property. She entered into a contract of lease with Sutlive Brothers for a period of five years; before the expiration of this lease, another lease at the same rental was entered into between the parties, the term specified being from May 15, 1910, to May 15, 1920. Mrs. Rigler died intestate on March 6, 1910, survived by two daughters. As in the instant case, her death occurred slightly more than two months before the expiration of the first lease. The remaindermen subsequently sold the property to one Sanders, and litigation resulted to determine whether the lease had been previously ratified by such remaindermen.

[2] Emphasis supplied.

[3] Emphasis supplied.

will depends upon the proof in this case. We agree with appellant that upon the death of Mrs. Gibbons, it became necessary that the remaindermen ratify the lease before appellees could successfully claim any rights thereunder. We also agree that oral ratification would not be sufficient. As stated in Words and Phrases, Vol. 36, page 131:

" 'Ratification' is equivalent to original authority, and, where a statute requires the original authority to be in writing, on principle, the ratification must also be."

It was not necessary, however, that the ratification be endorsed on the lease itself, but any writing, denoting recognition and approval, would amount to ratification. *Allegany Gas Co., to Use of East Penn Development Co.* v. *Kemp,* 316 Pa. 97, 174 Atl. 289.

After a study of the evidence, we conclude there was sufficient evidence to submit to the jury the question of whether the lease had been ratified in writing. Appellant admitted that he received a letter from Cecil Gibbons, a son of Mrs. Mina Gibbons, on January 16, 1956, relative to a prior conference the two had had in regard to a sale of the land. The letter contains the following language:

"After our telephone conversation last Thursday, I again discussed selling our land in Independence County, Arkansas, to you with my brother and sister and our attorney, Mr. Frank Schwirtz of Bellevue, Iowa.

As a result of this conference we agreed that we would sell the land to you for a cash payment of $30.00 an acre, subject to the existing lease now held by Mr. Clyde Griffin of Newark.

The selling price would therefore be $10,720.00 subject to the lease held by Mr. Griffin, which would be assigned to you. In order that you will be fully informed as to the text of the lease, I am enclosing a copy thereof.

I am sending copies of this letter to both Mr. Clyde Griffin and Mr. Barney Young so that each will be fully

informed of our intentions. It is hoped that if you are still interested in buying the land at the above figure, a satisfactory arrangement can be worked out between you and the lessee, in order that the transaction can be completed. * * *''

Edwards says this was only an offer of sale, which he rejected, pointing out that the selling price offered in the letter was $10,720, whereas the sale was actually consummated for an agreed sum of $10,150. Gibbons also wrote a letter on the same date to Griffin, enclosing a copy of the letter to Edwards, and stating:

''* * * So if Mr. Edwards wants to buy and can work out the lease with you, we will let the land go.

In the event that Edwards does not want to buy, we will probably place the land in some dealer's hands for sale, under the same conditions stated in Edwards' letter. * * *''

The deposition of Gibbons, taken by interrogatories, (the witness being in Rock Island, Illinois) was read to the jury. Gibbons stated that he received a reply from Edwards to his letter of January 16th, in which Edwards offered $10,160 for the land (which offer was later accepted), and that relative to the lease, Edwards stated:

''The lease speaks for itself, and there is nothing that can be done about it unless there is a non-compliance of same.[4]''

When questioned by cross interrogatories as to whether the terms of the sale agreement were different from the original offer, Gibbons twice stated: ''The selling price was different.'' While it is true that Gibbons also testified; ''I personally never signed any lease or ratified one in writing,[5] and to the best of my knowledge, neither did my brother or sister,'' a pertinent fact was tes-

---

[4] Edwards stated he did not remember making such a statement, and did not believe that he did.

[5] The latter part of the answer was ruled out by the court as the opinion of the witness.

tified to by the witness in answer to the very next question.

"CROSS INTERROGATORY NO. 11.

"When you and the other heirs of Dr. E. A. Gibbons conveyed the lands to Mr. J. G. Edwards, was it your intention and belief to convey same free of any lease on the lands, and did you believe at the time you executed the deed to Mr. Edwards that you were conveying same free of any lease on the lands? Explain fully.

"Answer:

"As is ascertained by Cross Interrogatory No. 6, Mr. Edwards was furnished a copy of the lease during the initial negotiations, and the land was sold to him only after receipt from him, Mr. Edwards, of affidavit stating that he was fully aware of the existence of said lease, and that he assumed all the responsibility of the lease. Affidavit on file in Rock Island."

Thus, we find the following evidence on behalf of appellees: First, on January 16, 1956, Edwards was sent a copy of the lease by Gibbons, and notified that the sale of the property would be subject to the lease; second, Griffin was notified by letter of the same fact; third, according to Gibbons, Edwards had recognized that he would have to buy subject to the lease, and fourth, the only difference in the accepted agreement and original offer was a reduction in price. As stated, there was ample evidence to warrant submission of the issue of ratification to the jury.

Appellant contends that the court erred in giving its instruction V. Such instruction was as follows:

"You are instructed that under the law a lease by a life tenant which does not take effect until after her death, or which was not supposed to take effect until after her death, would expire with her death unless you find from a preponderance of the evidence that the lease was subsequently ratified by the owners of the land or someone acting as their agent.

"If you find by a preponderance of the evidence that Mrs. Mina Gibbons executed a lease to the lands in question prior to the time of her death in October, 1955, for a period of five years beginning on January 1, 1956, with the defendant, Clyde Griffin, and you further find from a preponderance of the evidence that Cecil Gibbons, acting as the agent of the heirs of Mrs. Mina Gibbons and the heirs at law of Mina Gibbons and E. A. Gibbons, did, prior to the date of the sale of said lands, to-wit; the 23rd day of March, 1956, recognize and ratify said lease, and the plaintiff Edwards had knowledge of such ratification, you are instructed that ratification may be by writing or by some other act or acts or word or deed signifying acceptance of the terms thereof, then your verdict would be for the defendants for the possession of the property in question under the terms of the lease."
The portion of the instruction complained of related to the court's definition of ratification, *viz.*, "you are instructed that ratification may be by writing or by some other act or acts or word or deed signifying acceptance of the terms thereof, then your verdict would be for the defendants for the possession of the property in question under the terms of the lease." Appellant particularly assails the use of "word", and such argument is sound since the lease could not be orally ratified. No general objection was made, and the specific objections made did not go to that particular point. The record reflects that counsel for appellant stated:

"We certainly object to that instruction; they are dealing with a written lease; that is all anybody ever furnished him; that is what the defendants have set out and what they stand on."

Further objection was made by counsel as follows:

"I call attention to the court that there was no proof whatsoever to show that the alleged ratification by Mr. Cecil Gibbons to Clyde Griffin was ever communicated to J. G. Edwards, and that Mr. Edwards had made diligent inquiry as to the right or rights under which the defendants Clyde Griffin and Barney Young were in possession, and was advised that there was a lease

executed by a life tenant who had died, and that he had discharged all responsibility required of him by law as to taking possession by him."

The first objection apparently is directed to the contention that at the death of Mrs. Gibbons, appellees' rights expired, and they became tenants by sufferance; though it might also be construed that the objection went to the fact that the lease itself showed no ratification. As previously set out herein, objections on these grounds are of no validity since ratification in writing was sufficient, and the portion of the instruction dealing with written ratification was correct. The second objection to the instruction dealt with a contention that the alleged ratification of the lease was never communicated to appellant. Neither objection relates specifically to the court's instructing the jury that the contract could be ratified orally.

Appellant argues that at any rate, there is nothing in the record showing a ratification of the lease by the other Gibbons heirs, and no evidence to establish Cecil Gibbons as their agent or to show that he had any authority to act for the other two. We find this contention to be without merit. In the first place, certainly Edwards must have recognized that Cecil Gibbons was acting for his co-owners, for all of his negotiations were entirely with Cecil. While Gibbons' discovery deposition was taken, no questions were asked by either side as to his authority to act. In his letter to Edwards of January 16th, Gibbons commented that "* * * I again discussed selling our land in Independence County, Arkansas, to you with my brother and sister * * *" However, the clearest evidence that Gibbons had authority to act for his brother and sister is the fact that they joined in the execution of the deed to Edwards, though all negotiations had been carried on entirely with Cecil Gibbons.

Finding no reversible error, the judgment of the Circuit Court is affirmed.