383 P.2d 827

William B. PRINCE, Plaintiff-Appellee,

v.

CHARLES ILFELD COMPANY, a corporation, Defendant-Appellant.

No. 7232.

Supreme Court of New Mexico.

July 15, 1963.

Nordhaus & Moses, Fred Trechel, Albuquerque, for appellant.

Manuel A. Sanchez, Alfred P. Whittaker, Santa Fe, for appellee.

COMPTON, Chief Justice.

This appeal is from a judgment awarding $11,000.00 to appellee for his interest in certain land located in Santa Fe County, New Mexico. The award is based upon a contract between the parties providing for the payment of this amount by appellant to appellee in the event the District Court of Santa Fe County determined that appellee had a valid existing claim to title to the property involved herein. The court found in favor of appellee and this appeal follows.

The issues raised deal primarily with (1) the nature of appellee's interest in 1905 and its assignability; (2) the date of cessation of use of the condemned property for railroad purposes; and (3) the statute of limitations as a bar to recovery of any claim appellee may have had. The issues seem simple yet they are involved, necessitating extensive research and discussion.

On September 4, 1903, one Philip E. Moisson was the owner of Lots 166 and 167 within "Valuable Building Lots Adjoining Railroad Depot, Santa Fe, New Mexico, 1880." On that date, pursuant to Sections 3804 to 3858, inclusive, 1897 Compilation, New Mexico Statutes, portions of these lots were condemned "to the uses and purposes of the Santa Fe Central Railway Company in the construction, maintenance, operation and use of its line of railroad and telegraph." By the decree, which was duly recorded, the railway company was authorized to "enter into, hold, possess and enjoy for the purposes aforesaid" the said land, real estate and property. The Atchison, Topeka & Santa Fe Railway Company, hereinafter referred to as Santa Fe Railway Company, is the successor of the Santa Fe Central Railway Company.

On May 1, 1905, Moisson quitclaimed to appellee these and other lots subject to their uses for railroad purposes, thus conveying his "contingent reversionary interests," and this deed was recorded in 1911. Prior to 1940 appellant leased portions of the property involved upon which it built a warehouse. On November 30, 1943, it received a Trustees' Deed from the trustees of the property of The Denver & Rio Grande Western Railroad Company, including portions of lots 166 and 167 which deed sold,

conveyed and quitclaimed to appellant all of their right, title and interest in and to the property as trustees of that railroad company. This deed was also recorded. In 1945 appellant erected a stucco addition to its warehouse, the major portion of which is on lot 166. On April 30, 1948, appellant received a quitclaim deed from Santa Fe Railway Company to other portions of lot 166, acquired by condemnation. This deed was likewise recorded.

Thereafter, on or about February 15, 1960, appellant conveyed the entire fee in real estate, including the portions of the lots involved to the State of New Mexico. Preparatory to making the conveyance a title search revealed that appellee had a claim possible of enforcement on the property by virtue of the deed from Moisson to him, and that a quitclaim would be required from him to the State of New Mexico in order to remove the claim. Consequently, on January 13, 1960 appellant and appellee entered into the contract, previously mentioned, at which time the total value of the portions of the lots involved was fixed at $15,000.00. Appellee received at the time $4,000.00 for his quitclaim deed to the State, the balance of $11,000.00 being subject to determination by the district court.

It was stipulated that appellant was in possession of the ground covered by its warehouse and stucco building prior to 1940 and was in continuous possession of the warehouse and building from that time until 1960; that appellant's name appeared on the warehouse prior to 1940 and remained thereon until 1960; that appellant obtained the deed from Santa Fe Railway Company for the purpose of acquiring title to said property, as it no longer desired to hold under lease as property was becoming valuable; that appellant made no investigation at the time it took the deed to determine whether Santa Fe Railway Company owned the property or whether plaintiff had an interest therein; that appellant paid all taxes on the property from 1948 to 1959. It was further stipulated that Santa Fe Railway Company, for more than 30 years, had used and is now using the grounds of area lying easterly of and adjoining the warehouse and stucco building for railroad purposes.

Defendant concedes that by the then existing eminent domain statutes pertaining to railroads, it was not intended that absolute fee simple title in the condemned property become vested in the railroads but, on the contrary, that title in the property was conveyed to them so long as the property was used for railroad purposes, as a public use. The language of the condemnation decree before us followed the language of the statute. See Wabash Ry. Co. v. Chauvin, 346 Mo. 950, 144 S.W.2d 110, where the condemnation title provisions of the general laws of 1855 in Missouri, condemning property for railroad uses and purposes, contains language al-

most identical to the statute with which we are here concerned.

All that the railway company took in 1903 by condemnation was a base, qualified or determinable fee, with a possibility of reverter to the original owner upon the abandonment of the uses and purposes for which it was condemned. Fitch v. State, 139 Conn. 456, 95 A.2d 255; Calhoun v. Hays, 155 Pa.Super. 519, 39 A.2d 307; Reichard v. Chicago B. & Q. R. Co., 231 Iowa 563, 1 N.W.2d 721; Peters v. East Penn Township School District, 182 Pa. Super. 116, 126 A.2d 802; Consolidated School District No. 102 v. Walter, 243 Minn. 159, 66 N.W.2d 881, 53 A.L.R.2d 218. The court correctly found that Moisson continued in ownership of reversionary rights in and to said real estate until the 1905 deed to appellee.

It is appellant's contention that a possibility of reverter after a determinable fee was not an assignable interest in New Mexico in 1905. The statute in effect on that date, which is the present § 70–1–3, N.M.S.A., 1953 Comp., states:

> "Any person or persons, or body politic, holding, or who may hold, any right or title to real estate in this state, be it absolute or limited, in possession, remainder or reversion, may convey the same in the manner and subject to the restrictions prescribed in this chapter."

We think there can be no doubt that the owner of a possibility of reverter comes within these provisions and that such a contingent reversionary interest was and is alienable. Sections 70–1–21 and 70–1–22, 1953 Comp., being Sections 1 and 2, Chapter 4, Laws 1937, which appellant contends made this right alienable for the first time, specifically relate to the assignability of a possibility or right of reversion "for breach or violation of condition or conditions subsequent." It requires no citation of authority to support the assertion that a conveyance of a determinable fee, in which the grantor or owner retains a possibility of reverter, is not a conveyance subject to a condition subsequent, the latter being a conveyance in which there remains to the grantor only a power of termination or right of re-entry for condition broken, which certainly is not the case here. However, for a clear statement of the distinction, see Consolidated School District No. 102 v. Walter, supra; People by and through Dept. of Public Works v. City of Fresno, Cal.App., 26 Cal.Rptr. 853; Note in 53 A.L.R.2d 224.

Both by judicial decisions and by statutes in the various states it has been held that a possibility of reverter is alienable. In London v. Kingsley, 368 Pa. 109, 81 A.2d 870, it is most aptly stated thus:

> "While the terms 'possibility of reverter' and 'reversion' have at times

been used interchangeably and confusedly, the courts of Pennsylvania have held, for over 100 years, that a possibility of reverter, like any other reversionary interest, is capable of transmission by inheritance, conveyance or release. * * * The law of Pennsylvania on this point has been adopted by the Restatement, Property, Future Interests, § 159, p. 570.

"The basic reason for these decisions was probably because our courts saw neither reason, logic nor necessity for continuing the doctrine of a feudal society in modern commercial and industrial times. Cf. 3 Simes, Future Interests, § 715. The power to dispose of a possibility of reverter is in accord with sound public policy in the interest of modern civilization. Cf. Graves, Notes on Real Property, pages 392, 393."

See also Dickerman v. Town of Pittsford, 116 Vt. 563, 80 A.2d 529; Richardson v. Holman, 160 Fla. 65, 33 So.2d 641; James v. Dalhart Consolidated Independent School District, C.C.A.Texas, 254 S.W.2d 826; Caruthers v. Leonard, Tex.Com.App.1923, 254 S.W. 779; Brown v. Independent Baptist Church of Woburn, 325 Mass. 645, 91 N.E.2d 922, citing Tiffany, Real Property, 3rd Ed., § 314, note 31; and Reichard v. Chicago B. & Q. R. Co., supra.

This would appear to be in accord with the views expressed by this court in Gurule v. Duran, 20 N.M. 348, 149 P. 302, L.R.A. 1915F, 648, wherein it was held, in 1915, that only so much of the common law was adopted in New Mexico as was applicable to the changed conditions and circumstances under which we live. This same reasoning, as early as 1852, apparently led to the passage of the above-quoted statute declaring the transferability of interests in lands.

■ There is no merit in appellant's contention that the assignment of a possibility of reverter is violative of the rule against perpetuities. Here, the base or qualified estate had already vested and the possibility of reverter is not considered an outstanding estate. The nonvesting of a mere possibility of an estate does not and could not violate the rule. County School Board of Scott County v. Dowell, 190 Va. 676, 58 S.E.2d 38; In Re Reichard's Petition, 188 Pa.Super. 130, 146 A.2d 71; 19 Am.Jur., Estates, § 31, p. 491; 1 Minor, Real Property, 2nd Ed., § 780; Simes & Smith, The Law of Future Interests, Ch. 9, § 294.

Having concluded that appellee received a valid contingent reversionary interest in the property involved by quitclaim deed in 1905, we turn to the question whether appellee had a valid, existing claim to the property at the time of the agreement with appellant prior to the conveyance to the State of New Mexico.

The appellant claims title in fee simple to the subject real estate under the deeds,

mentioned above, from the Denver and Rio Grande Western Railroad Company in 1943, which included a portion of Lots 166 and 167, and from the Santa Fe Railway Company in 1948, which included another portion of these lots. It is appellant's position that the recording of the latter deed on September 29, 1948, was constructive notice of its claim to all of the property, including these portions of lots 166 and 167, at which time appellee's cause of action matured; that as a result of the running of the statute of limitations appellee is barred from making any claim thereto and appellant's title has been perfected by adverse possession.

Appellee, on the other hand, takes the position that the property was held by the railroads subject to its use for railroad purposes and they, as grantors, could convey no greater interest than they held; that the conveyances did not repudiate the terms under which the property was held; that one may not claim title by adverse possession against a public use and, finally, that possession of property, permissive in its inception, cannot be converted into a claim of ownership by adverse possession without actual notice.

The pertinent facts, hereinabove set forth, and as found by the trial court, establish that appellant was in continuous possession of the property until its conveyance to the State of New Mexico in 1960, from which time it has been and is now being used for the housing of records of agencies of the state; that the visible use of that property, as well as that of adjoining property, for railroad purposes, had remained unchanged for more than 30 years prior to the conveyance to the state; and that at no time did appellee receive actual notice of any intention of using the property for other than railroad purposes prior to the proposed sale to the state.

The trial court concluded that the property ceased to be used for the purposes for which it was condemned upon conveyance to the State of New Mexico in 1960; that at that time the property reverted to appellee who then had a valid claim not barred by the statute of limitations or otherwise barred. Appellant attacks these conclusions as well as the conclusion that it failed to establish title by adverse possession.

The leasing of the property by appellant from the railroads, the erection of its warehouse and other structures, and the use of the property for a number of years prior to the conveyance in 1948, as a use for railroad purposes, has not been seriously questioned here. That such uses may not be inconsistent with railroad purposes was recognized by this court in Garry v. Atchison, Topeka and Santa Fe Railway Co., 71 N.M. 370, 378 P.2d 609. Contrary to the facts in the Garry case, however, we have before us subsequent conveyances to a private corporation which, although con-

**358**

tinuing the same use of the property, claims fee simple title thereto. Without regard to the extent of the interests which appellant claims to have purchased from the railroads, but assuming that the deeds were sufficient color of title under which it could base a claim to title by adverse possession, the question is whether appellant, though continuing to occupy the premises for the same uses and purposes as when a lessee, by the recording of the last deed in 1948 and thereafter claiming ownership of the property, can assert the bar of the statute of limitations by adverse possession against appellee. We think not.

Section 23–1–22, N.M.S.A., 1953 Comp., relating to title in fee simple by adverse possession, provides:

"* * * 'Adverse possession' is defined to be an actual and visible appropriation of land, commenced and continued under a color of title and claim of right inconsistent with and hostile to the claim of another; * *."

Conceding that appellant promptly recorded its quitclaim deed in 1948, paid all taxes thereafter and remained in actual, visible and continuous possession of the property under a color of title and claim of right inconsistent with the claim of appellee, its claim to adverse possession lacks at least one important requirement, that of hostility.

We are not dealing with a situation in which one claiming adverse possession, up-on recording a quitclaim deed entered into actual, visible, exclusive, hostile and continuous possession of property and pays the taxes thereon for the statutory period, as in Thurmond v. Espalin, 50 N.M. 109, 171 P. 2d 325. There we stated that the acceptance of the deed by the grantee, *his entry under it* and his continued acts thereafter of ownership of, and dominion over, all of the land, were hostile to the rights of the appellants. It was the recording of the deed together with the possession that gave constructive notice of the hostile nature of the claim. Nor does this conflict in any manner with our decision in Lummus v. Brackin, 59 N.M. 216, 281 P.2d 928, where, as here, the adverse possessor was a lessee in possession at the time he accepted a quitclaim deed. In the case we held that the filing of the quitclaim deed operated as a sufficient disseisen, or repudiation of the existence of the cotenancy. Nevertheless we held in that case, after pointing out the visible changes made in the use of the property that "The character of the land and the use to which it is adapted largely controls the acts necessary to be exercised in order to constitute open, hostile and exclusive possession." See also Stull v. Board of Trustees, etc., 61 N.M. 135, 296 P.2d 474.

In the present case the possession by appellant commenced under lease as a permissive use subservient to the rights of the railroad to use the property for railroad purposes and to the rights of appellee upon

cessation of its use for such purposes. There was nothing inconsistent with or hostile to any claim of appellee in the character of the possession of the property by appellant prior to the conveyance to the State of New Mexico.

As we stated in Apodaca v. Hernandez, 61 N.M. 449, 302 P.2d 177, possession originating in tenancy is presumably permissive, not hostile. Adverse possession must be openly hostile. Divestiture of title by adverse possession rests upon the proof or presumption of notice to the true owner of the hostile character of possession.

Where possession is consistent with the rights of owners of record title, nothing but clear, unequivocal and notorious disclaimer and disavowal will render it adverse. There must be something which amounts to an ouster, either actual notice or acts and conduct that will clearly indicate that the original permissive use has changed to one of an adverse character. Cox v. Godec, 107 Colo. 69, 108 P.2d 876, 109 P.2d 643; Lindokken v. Paulson, 224 Wis. 470, 272 N.W. 453, 110 A.L.R. 910; McNeill v. Sheboygan & N. R. Co., 206 Wis. 544, 240 N.W. 377; Pullman Car & Mfg. Corporation v. Stroh, 349 Ill. 492, 182 N.E. 399; City of Grand Rapids v. Pere Marquette Ry. Co., 248 Mich. 686, 227 N.W. 797; In re Auditor General, 281 Mich. 153, 274 N.W. 745; Thompson v. Toledo, St. L. & W. R. Co., 271 Ill. 11, 110 N.E. 901; Walter v. Jones, 15 Ill.2d 220, 154 N.E.2d 250; Acton v. Culbertson, 38 Okl. 280, 132 P. 812; Scales v. Mitchell, 406 Ill. 130, 92 N.E.2d 665; 2 C.J.S. Adverse Possession § 87.

In view of the conclusion reached, no discussion is required of other points raised. The judgment should be affirmed and it is so ordered.

CHAVEZ and MOISE, JJ., concur.