461 P.2d 903

**R. M. TIMBERLAKE, Plaintiff-Appellant,**

v.

**SOUTHERN PACIFIC COMPANY, a corporation, Henry Page, Robert Page and all unknown Claimants in the Premises adverse to the Plaintiff, Defendants-Appellees.**

**No. 8726.**

Supreme Court of New Mexico.

Oct. 27, 1969.

Rehearing Denied Dec. 12, 1969.

Modrall, Seymour, Sperling, Roehl & Harris, John R. Cooney, Albuquerque, for plaintiff-appellant.

White, Gilbert, Koch & Kelly, Santa Fe, for defendants-appellees.

OPINION

WATSON, Justice.

On February 25, 1907, Lera Page, predecessor in interest to plaintiff-appellant Timberlake, filed with the United States Land Office in Las Cruces a homestead entry on 131.44 acres of land in Dona Ana County, New Mexico. On March 21, 1907, El Paso and Southwestern Railroad Company, predecessor of defendant-appellee Southern Pacific Company, filed with the

same land office a plat of survey showing the location of a 20 acre tract to be used as a station ground. The plat was filed pursuant to The General Railroad Right-of-Way Act of March 3, 1875, 43 U.S.C.A. §§ 934 through 939 (1964). On September 11, 1907, the United States Department of Interior approved this plat. On January 14, 1909, a United States patent was issued to Lera Page covering the land described in her homestead entry which included the 20 acre station ground area and which contained no reservation concerning it.

On February 4, 1955, plaintiff-appellant Timberlake acquired most of the land patented to Lera Page from her heirs by quitclaim deeds which excepted "that portion thereof taken by the Southern Pacific Railroad Company (formerly El Paso & Southwestern Railroad Company) for right-of-way and depot site." Later appellant obtained correction deeds which apparently eliminated the exception as to the "depot sites," as the trial court found that appellant was the successor in interest of the original patentee.

On February 2, 1965, Timberlake, claiming title in fee simple to the 20 acre tract, brought suit to quiet title against Southern Pacific Company in the District Court of Dona Ana County. The Railroad's defense was that it had better title by virtue of the Act of March 3, 1875, supra, and by adverse possession, and that by leasing a portion of the property from it, plaintiff Timberlake was estopped to deny its title. The trial court found for the defendant on these issues, and its judgment was that the plaintiff take nothing by his complaint against the defendant, Southern Pacific Company. The plaintiff has appealed from this judgment. We quote the applicable portions of 43 U.S.C.A. § 934:

"The right of way through the public lands of the United States is granted to any railroad company duly organized under the laws of any State * * * to the extent of one hundred feet on each side of the central line of said road * * also ground adjacent to such right of way for station buildings, depots, machine shops, side tracks, turnouts, and water stations, not to exceed in amount twenty acres for each station, * * *."

Appellee would have acquired an easement for railroad purposes under this act, Great Northern Ry. Co. v. United States, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836 (1942), except for the intervention of the possessory claim of Lera Page, the homesteader and appellant's predecessor in title.

The trial court found from substantial evidence that appellee railroad had placed improvements on the 20 acre tract in dispute and had used it for railroad purposes for over 30 years, and that appellant knew of these improvements and of the appellee's use of the property before he attempted his purchase.

■ Although appellant's predecessor did acquire a right in the premises before appellee's entry thereon, nevertheless when the railroad company took possession of the land and used it for its purposes without complaint by the land owners, it acquired all possessory rights to the land necessary for its purposes. Sections 22–9–1 and 22–9–14, N.M.S.A.1953 Comp., and § 22–9–22, N.M.S.A.1953 Comp. (1969 Supp.); Atchison, Topeka & S. F. Ry. Co. v. Richter, 20 N.M. 278, 148 P. 478 (1915); Garver v. Public Service Co. of New Mexico, 77 N.M. 262, 421 P.2d 788 (1966). Under Art. II, § 20 of the New Mexico Constitution there is no requirement for payment in advance for the property taken. State Highway Commission v. Ruidoso Telephone Co., 73 N.M. 487, 389 P.2d 606 (1963).

What was the nature of the title acquired by appellee by its taking under our laws? In Prince v. Charles Ilfeld Co., 72 N.M. 351, 383 P.2d 827 (1963), we held that the railroad company took a qualified or determinable fee, with the possibility of reverter to the original owner. In Prince, supra, Ilfeld Co., the successor of the railroad, contested the reversionary right of Prince, the successor to the original land owner whose property had been condemned by the railroad pursuant to §§ 3804 to 3858 inclusive,

N.M.C.L.1897. These sections, however, were repealed by implication by ch. 97, N. M.S.L.1905 (now §§ 22–9–1 to 22–9–21, N. M.S.A.1953 Comp.), so that the present laws of eminent domain, being ch. 97, N.M.S.L. 1905, were controlling during all times relevant to the matter before us.

Neither the earlier statute nor the Laws of 1905, supra, applicable in the present case specifically state the nature of the title to be acquired by the condemnor. The old statute provided for vesting of title and the right to occupy and use the same for railroad purposes, although § 3854, supra, thereof seemed to limit the possession and use for the purposes of the corporation during the continuance of its corporate existence. The 1905 statute, now § 22–9–1, supra, provides for damages sustained in the establishment and maintenance of the railroad used for public purposes, and § 22–9–3, supra, allows the railroad to hold an interest in the property for such uses. Section 22–9–6, supra, again reiterates the taking and using of the condemned property for the construction and improvements in connection with the railroad.

■ In Prince, supra, the lots were condemned to the uses and purposes of the Sante Fe Central Railway Company "in the construction, maintenance, operation and use of its line of railroad and telegraph," and the decree authorized the railroad company to "enter into, hold, possess and enjoy for the purposes aforesaid" the lots in question upon which appellant's warehouse had been built. We held that the language of the decree followed the language of the statute. We affirmed the trial court in its judgment that the railroad took only a qualified or a determinable fee which had reverted to the original owner upon the abandonment of the uses and purposes for which it was condemned. The general rule is stated in 30 C.J.S. Eminent Domain § 449, as follows:

"The nature and extent of the title or right taken in the exercise of eminent domain depends on the statute conferring the power. The statute will be strictly construed; where the estate or interest is not definitely set forth, only such estate or interest may be taken as is reasonably necessary to answer the public purpose in view."

The United States Congress recognized this right of railroads as to its prior permittees upon their compliance with the provisions of the Act of March 3, 1875, supra, which gave them their right in the government's interest. Section 3 of the Act reads:

"The legislature of the proper Territory may provide for the manner in which private lands and *possessory claims* on the public lands of the United States may be condemned; * * *." (Emphasis added.)

■ At the initiation of appellee's taking of the property, appellant's predecessor had only a possessory claim under her homestead entry; all other rights in the property belonged to the United States. Without the authorization set forth in § 3 of the Act of March 3, 1875, supra, appellee's taking would have been partially, if not totally, ineffective. The rights it acquired by virtue of the laws of New Mexico are limited to any restrictions or prohibitions of the laws of the United States. See Spokane Falls & N. R. Co. v. Ziegler, 167 U.S. 65, 17 S.Ct. 728, 42 L.Ed. 79 (1897). The federal and state laws are consistent and would require a determination that appellee acquired a limited fee interest only in the 20 acre tract as necessary for its purposes which would revert to the appellant upon forfeiture or abandonment. In such case it would appear that the provisions of 43 U.S.C.A. § 912 (1964) would be applicable. This statute provides for such reversion when forfeiture or abandonment is decreed by a court of competent jurisdiction, or by act of Congress.

The trial court was correct in its conclusion number 3 that under the Act of 1875, supra, appellee and its predecessor had acquired the exclusive occupancy and use of all of the surface rights in and to the 20 acre station ground tract for railroad purposes and all rights incidental thereto.

■ The conclusion of the trial court that appellee has not abandoned or forfeited its right, title, or interest in the 20 acre tract was based upon its assumption that a fee title had been acquired by adverse possession; otherwise, there were no findings to support it. On the issue of adverse possession, however, the trial court erred.

■ In Prince, supra, appellant Ilfeld Co. claimed to have acquired a better title by adverse possession. It had been a former tenant of the railroad's warehouse but purchased the property in 1948 and continued its use until 1960. Its visible use had remained unchanged for more than 30 years, but appellee had never received notice of any intention of using the property for other than railroad purposes. Based on this we held that the appellant's claim of adverse possession lacked the element of hostility and that there was nothing inconsistent with, nor hostile to, any claim of appellee in the character of the possession of the property. Adverse possession must be openly hostile and here, as in Prince, supra, there is no showing of open hostility to the subordinate or reversionary rights of appellant Timberlake.

From our holding in Prince, supra, it would appear that in the present case appellant Timberlake is the owner of a possibility of reverter, which is a contingent reversionary interest. Unlike the right of reentry under a condition subsequent, the possibility of reverter is a present vested estate to come into future possession upon the provision for termination, such as failure to use for the purpose acquired. See Consolidated School District No. 102 v. Walter, 243 Minn. 159, 66 N.W.2d 881, 53 A.L.R.2d 218 (1954), and the Note following at page 224. It is an interest in real estate for which a suit to quiet title will lie. Compare Stanton v. Catron, 8 N. M. 355, 45 P. 884 (1896); Sullivan v. Albuquerque Nat. Trust & Savings Bank, 51 N.M. 456, 188 P.2d 169 (1947); and Bolack v. Hedges, 56 N.M. 92, 240 P.2d 844 (1952).

Until abandonment or forfeiture has been determined, appellants have a contingent reversionary interest in the property. We do not rule on the question of forfeiture or abandonment. This issue was not presented to the trial court because of a stipulation of the parties. It shall not be deemed res judicata should it be presented in this or any subsequent action.

The cause will be reversed and remanded to the district court to set aside its judgment and enter judgment for appellant establishing his title in and to a valid contingent reversionary interest in the property subject to appellee's qualified or determinable fee.

It is so ordered.

COMPTON and TACKETT, J., concur.