502 P.2d 287 (1972)
84 N.M. 202
Maria K. NEVAREZ et al., Plaintiffs-Appellees,
v.
The STATE ARMORY BOARD of the State of New Mexico and the United States of America, Defendants-Appellants.
No. 9419.
Supreme Court of New Mexico.
September 22, 1972.
Rehearing Denied October 24, 1972.
*288 David L. Norvell, Atty. Gen., Thomas Patrick Whelan, Jr., Asst. Atty. Gen., Santa Fe, for defendants-appellants.
Lalo Garza, R.C. Garland, Martin & Martin, William L. Lutz, Las Cruces, for plaintiffs-appellees.

OPINION
STEPHENSON, Justice.
This suit was brought in the District Court of Dona Ana County to recover damages for the taking of 7.45 acres of land without compensation. The trial court found appellant ("the Board") liable as a matter of law, and approved the commissioners' assessment of the property's value. Judgment was entered for appellees in the amount of $87,000 plus interest. The Board appeals.
The complaint alleged that appellees' property had been taken without compensation and asked for damages. The Board answered, and both parties moved for summary judgment on the issue of liability. The motions for summary judgment were submitted on the basis of a stipulation as to facts and authenticity of documents.
From the stipulation, it appears that on July 9, 1940, the Town of Las Cruces instituted proceedings to condemn lands, including the tract which is the subject of this dispute, for airport purposes. Appellees or their predecessors in interest were the owners in fee of the land when condemnation proceedings were instituted. The District Court of Dona Ana County approved the condemnation on February 18, 1941 and damages were awarded to the owners.
In 1948, the City of Las Cruces leased part of the land so condemned to the Board. The 1948 lease was surrendered in 1962 in consideration for a new lease which added a parcel to the property originally leased, aggregating the property now in litigation. Both of these leases were for a term of ninety-nine years. The Board has been in continuous possession of the tract and has made valuable improvements on it. On December 6, 1965 the City of Las Cruces abandoned all of the land condemned for an airport and on December 14, 1965 executed quitclaim deeds to the former owners or their successors in interest. In its resolution approving the abandonment, the city council said that the "reversion may be subject to the rights of third parties as lessee."
The District Court granted appellees' motion for summary judgment and found that title to the land in question had reverted to them when the City of Las Cruces abandoned the lands used for the airport. The correctness of this action by the trial court, and its denial of the Board's motion for summary judgment, are attacked by the Board in its first point.
The Board moved the court to instruct the commissioners to find the value of the property described in the lease of 1948 as of its date; the total rental value of the property described in the 1948 lease from that date; the value of the property added by the 1962 lease as of its date; the total rental value of the property added by the 1962 lease from that date; and the value of improvements made by the Board. These requested instructions were denied. The court instructed the commissioners to determine the fair market value of the land as of the date of the abandonment. The court's refusal to instruct the appraisers as requested by the Board is attacked in a second point.
In due course, the commissioners reported their appraisal, their report was approved and judgment entered for appellees, together with interest from December 6, 1965 until paid.
We are met at the outset with a procedural question. Appellees assert that the Board cannot attack the summary judgment because it was not mentioned in the notice of appeal. It is true the notice of appeal does not mention the summary judgment, but the judgment does and we *289 cannot agree with the appellees on this point.
The summary judgment, so far as here pertinent, was confined to the issue of liability. Following the appraisal and proceedings had in relation to it that we have briefly recounted, the judgment was entered about six months after the summary judgment. The judgment recited the entry of summary judgment on the issue of liability and in its operative provisions, inter alia, "confirmed" the summary judgment. The notice of appeal mentioned only the judgment, based upon which the appellees assert a failure of compliance with Supreme Court Rule 5(5) [§ 21-2-1(5)(5) N.M.S.A., 1953] which provides that "the judgment, order or part thereof appealed from" shall be specified in the notice of appeal. Appellees say a situation has resulted in which the Board is precluded from appealing issues determined by the summary judgment, i.e. liability.
In Baker v. Sojka, 74 N.M. 587, 396 P.2d 195 (1964) this court reviewed the source of Rule 5(5), decisions of federal courts construing the similar federal rule and approved a construction of our rule to the effect that:
"* * * even though the notice of appeal is deficient, if it is apparent therefrom that it is the intention of the appellant to appeal and if the appellee has not been misled, the notice of appeal will be sustained."
Judged by these standards, we hold the notice of appeal sufficient here. Appellees do not claim to have been misled. The issue of liability has been a central feature of the controversy. They rely primarily on Mabrey v. Mobil Oil Corp., 83 N.M. 740, 497 P.2d 742 (N.M.Ct.App. decided March 31, 1972), a case in which the notice of appeal was held inadequate. Mabrey is distinguishable on its facts in a number of ways, included among which are that Mabrey involved multiple parties with multiple claims, and the summary judgment was not made a part of the judgment. The case at hand more nearly resembles Lujan v. Gonzales, 84 N.M. 229, 501 P.2d 673 (N.M.Ct.App. decided July 21, 1972) in which the notice was held sufficient. See also Morgan v. Koch, 419 F.2d 993 (7th Cir.1969).
As to the merits, we observe that § 22-9-21 N.M.S.A. 1953 creates certain powers of condemnation and provides for the manner of their exercise. A proviso is appended to the effect that:
"* * * any property acquired under the provisions of this chapter shall be used exclusively for the purposes as set forth in this chapter and whenever the use of such property as herein contemplated shall cease for the period of three [3] years, the same shall revert to the original owner, his heirs or assigns."
The parties are agreed on the classification of the legal rights of the owners prior to abandonment. They say the City had a determinable fee and the appellees a possibility of reverter. We share this view, Prince v. Charles Ilfeld Company, 72 N.M. 351, 383 P.2d 827 (1963); Timberlake v. Southern Pacific Company, 80 N.M. 770, 461 P.2d 903 (1969), § 22-9-21, supra, and turn to a consideration of the Board's arguments.
The Board first contends that the City's resolution of abandonment did not affect the land in issue because of the inclusion of the phrase that the reversion "* * * may be subject to rights of third parties as lessee * * *." The act of abandonment, evidenced by the resolution, is clear and absolute. The heading of the resolution is:
"A Resolution Approving and Accomplishing the Abandonment of the Hereinbelow Described Tract Heretofore Held by the City Under Condemnation for Airport Purposes and Authorizing the Mayor to Execute Certificate of Abandonment."
The affected land is specified as having been acquired for airport purposes, and the entire tract, including the portion with *290 which we are concerned, is described. One of the recitals states:
"WHEREAS, the City now determines that the herein described tract is no longer required for said airport purposes and its continued use for said purposes is no longer necessary, * * *"
The operative portion of the resolution is:
"NOW, THEREFORE BE IT RESOLVED by the City Commission of the City of Las Cruces:

(1)
"THAT the tract hereinabove described be and the same hereby is abandoned and released for airport purposes and that the same by operation of law shall and hereby does revert to the owners of the fee simple title, * * *"
The language relied upon by the Board then follows in a second numbered paragraph.
It is probably sufficient to say that the resolution simply does not bear the construction contended for by the Board. However, the resolution can be analyzed from a standpoint of either statutory construction or conveyancing with the same result. Regarding the former, if we assume a sufficient ambiguity to require construction, the Board runs afoul of the principle that courts should not construe statutes in such fashion as to write limitations therein. General words are to have general operation if the manifest intention affords no ground for qualification. 50 Am.Jur. Statutes § 230. Meaningless phrases or words inconsistent with the plainly expressed intention may be disregarded. Id. § 290.
From a conveyancing standpoint, with which these facts have a certain analogy, the Board is in effect claiming that the subject phrase constitutes an exception to the operation of the act of abandonment, thereby preventing the revesting of title in appellees. But the description of the excepted portion is not sufficient. It does not even exist. This would be fatal if we were considering an exception contained in a deed. 23 Am.Jur.2d Deeds § 266. And when the language of an exception is ambiguous or doubtful, it will be construed so as to resolve doubts in favor of the grantee. Id. § 273.
The Board argues that "may" in the clause upon which they rely should be construed as "shall." Such construction has been sanctioned when circumstances warrant, Reese v. Dempsey, 48 N.M. 417, 152 P.2d 157 (1944) or demand, or require, Farmers Development Co. v. Rayado Land and Irrigation Co., 28 N.M. 357, 213 P. 202 (1923) or dictate Catron v. Marron, 19 N.M. 200, 142 P. 380 (1914). Farmers however speaks of such construction as being a "dangerous power and leads to abuse, and should be exercised with reluctance and only in cases coming clearly within the recognized rules, or where the clear intent of the statute, as shown by the context, demands the application of such rule."
We have no quarrel with the law announced in these cases but find nothing here which warrants, demands, requires or dictates that "may" should be construed as "shall" in the resolution. Something more is required to meet these criteria than the mere fact that a litigant may otherwise be disappointed in the result of his lawsuit.
What we have said concerning the phrase under discussion is entirely apart from the issue of whether the City had the power to create the exception under these facts, even had it clearly expressed its intention of doing so  a proposition we regard as being doubtful. The phrase is a mere expression of a possible legal result or consequence which may or may not flow from abandonment. We hold that it does not affect appellees' rights.
The Board next contends that the quitclaim deeds did not affect its leasehold nor terminate the City's determinable fee. This is probably true, but is without significance. The appellees do not rely upon the deeds for title. The reversion of title to them flowed, by operation of law, from the abandonment. The deeds were merely convenient evidence of what had occurred. *291 We observe that the deeds described the entire tract and mention no exception, and are thus consistent with our construction of the intent of the resolution, rather than that contended for by the Board.
The Board claims that § 22-9-21, supra, permits a shifting from one public use to another without reversion, that is to say that although the property was acquired for use as an airport, nevertheless use as an armory was a type of public use for which condemnation could have been had, and the land in issue hence did not revert under § 22-9-21. It argues against multiple condemnations and awards when use is changed from one permissable purpose to another. In Prince, this court spoke of reverter occurring "upon the abandonment of the uses and purposes for which (the land) was condemned." However, we need not determine the question. Here, the land did not revert by virtue of § 22-9-21 but rather by an affirmative act of abandonment.
At 3 Nichols on Eminent Domain, § 9.36[1] et seq. reversion of condemned land is discussed. Of particular relevance is § 9.36[2] where it is stated:
"* * * [W]hen a fee is acquired by a municipal or a public service corporation conditional upon the continuance of the public use, if the use is discontinued or abandoned the title and right to possession revert to the grantor."
As to the rights of the holder of a possibility of reverter upon determination of the fee, Simes and Smith, The Law of Future Interests (2d Ed. 1956) § 293 states that the holder "becomes the holder of a present possessory interest, with all the legal consequences that flow from that fact. For example, he is entitled to immediate possession ..."
We are cited to no case which considers the rights of one who has leased from a condemnor in a situation where the demised premises thereafter revert, nor has our research discovered such a case. Several cases resemble or are analogous to the case at bar, and are consistent with our disposition of this case.
In Taylor Investment Co. v. Kansas City Power & L. Co., 182 Kan. 511, 322 P.2d 817 (1958) it was held that the abandonment of a railroad right-of-way resulted in a reverter which cut off the rights of a power transmission company which was a licensee of the railroad company. In Hazek v. Greene, 51 N.J. Super. 545, 144 A.2d 199 (1958), the court, speaking of the running of a period of adverse possession on property to which a traction company held a determinable fee, and which had reverted, said that:
"* * * any rights that were in the process of vesting against the traction company were necessarily cut off by the reverter, and the prescriptive period had to start running from the time title reverted."
A case which resembles the case at bar from a factual standpoint, except for the sequence of lease execution, is Isley v. Bogart, 338 F.2d 33 (10th Cir.1964). There the City had condemned land for use as a public produce market. Abandonment was by repeal of the ordinance authorizing operation of the market. The City leased to a bus company, apparently contemporaneously with or shortly after the repeal  a factual distinction from this case in which the lease preceded abandonment. The owners of the reversion prevailed over the bus company, the court concluding:
"In our opinion the purposes which authorized the condemnation have terminated; the burden of servitude is lifted; and the owners of the basic fee return to full dominion."
The rights of the Board, by analogy, resemble those of a lessee holding under a lease from a life tenant who dies during the term of the lease. Such were the facts in Pearce v. Auringer, 25 N.J. Misc. 424, 54 A.2d 822 (1947) where the court said:
"The terms of the lease entered into by the life tenant and the defendant are not binding upon the remaindermen or their *292 successors in title. A stream cannot rise higher than its source, and the death of the life tenant terminated the lease and the right of the defendant to possession as tenant. By remaining in possession after the death of the life tenant, the defendant may have become a tenant at sufferance by the inaction of the remaindermen, and as such would be liable to the remaindermen or their successors in title for the reasonable value of the use and occupation of the premises."
In the similar case of Guthmann v. Vallery, 51 Neb. 824, 71 N.W. 734 (1897), the court held that the lease terminated upon the death of the life tenant and said:
"One cannot convey to another a greater interest in real estate than he is himself possessed of, and the lease of the real estate made by the widow terminated at her death. Upon the termination of the life estate, the tenant in possession became a tenant at sufferance * * *"
See also Edwards v. Griffin, 228 Ark. 844, 310 S.W.2d 798 (1958).
The Board here, as a result of the abandonment, finds itself in the unfortunate position of holding a lease from an entity which has no right, title or interest in the demised premises.
In a second point the Board argues that the court erred in refusing to instruct the commissioners to find the various values that we have mentioned as of dates prior to 1965. The argument is predicated upon the efficacy of the Board's position that the abandonment of December 6, 1965 did not affect the leased acreage  a concept we have rejected  and therefore, if there was a reversion, it must have occurred when the leases, or one of them, was executed. The Board does not contend, or even concede, that a reversion did occur prior to 1965. So far as reversion is concerned, the case was presented below and here on the issue of its occurrence, if at all, as a result of the resolution. Occurrence at any other time was not asserted by the parties below and is not briefed or argued here. We will accordingly not concern ourselves with whether an abandonment or reversion occurred at times prior to the resolution.
Inasmuch as we have held a reversion did then occur as a result of which appellees became vested with a possessory right, the court did not err in instructing the commissioners to determine the value as of December 6, 1965, the day when appellees became entitled to, and were denied, possession, viz the date of the taking. § 22-9-22 N.M.S.A. 1953.
The judgment is affirmed.
It is so ordered.
COMPTON, C.J., and MONTOYA, J., concur.